## Case No. 1,479.

### BLAGGE v. MILES.

#### [1 Story, 426; [1] 4 Law Rep. 256.]

Circuit Court, D. Massachusetts. May Term, 1841.

TESTAMENTARY POWERS—EXECUTION — INTERPRETATION—FORMAL WORDS — INTENTION—WILLS—MASSACHUSETTS LAW.

1. The Revised Statutes of Massachusetts of 1835, (chapter 62, § 21.) providing for the case of a descendant, having no provision in the will of the ancestor, do not apply to cases, where the testator has a power of appointment over the estate to dispose of the inheritance, but only to cases, where it is the testator's own estate in fee.

2. It is the well settled doctrine of the law, that courts, in the interpretation of wills, are to regard the intention of the testator; and that technical words and set phrases are controlled by, and do not control, that intention, when clearly expressed or positively ascertained.

3. The same rule prevails generally in regard to the execution of powers, especially in regard to their execution by last wills and testaments. But the intention to execute the power must be clear. If it be doubtful, under all the circumstances, that doubt will prevent it from being deemed an execution of the power; although it is not necessary, that the inten-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reported by William W. Story, Esq.]

tion to execute the power should appear in express terms or by recitals in the instrument.

[Cited in Warner v. Connecticut Mut. Life Ins. Co., 109 U. S. 366, 3 Sup. Ct. 225; Lee v. Simpson, 134 U. S. 589, 10 Sup. Ct. 637.]

4. A will contained a clause, by which the testatrix devised to A. one fifth of all her real estate, in trust for the entire use and benefit of B. during her natural life, the said fifth part to be subject to the absolute disposal of the said B. by her last will and testament, and if the said B. should die without having disposed of the same, then the remainder and reversion were devised to her heirs for ever. B. subsequently procured a resolve of the legislature of Massachusetts, authorizing the sale of a part of the real estate, which had been set off to her under the aforesaid will, the proceeds to be invested in other estate to be held upon the like trusts, and for the same uses and purposes, as the same estate was then holden. The proceeds were accordingly invested in real estate in New London, Connecticut. Subsequently B. died, having made her will, by which she bequeathed to E. "my house and land in New London, being the same which I purchased of," &c.; and then, by a residuary clause, "All the rest and residue" of her estate, of "every nature and kind," she devised to her three daughters and their heirs for ever. B. had no other real estate, except what was devised to her by the original will. Upon these facts, it was *held*, that the resolve by the legislature of Massachusetts was not an unconstitutional exercise of power.

5. That by the terms of the resolve, the substituted estate was to be held upon precisely the same trusts as the original estate.

6. Admitting the trustee (by the resolve) had no right to invest the proceeds of the sale out of the commonwealth of Massachusetts; yet if that investment was adopted by the appointees under the power, and the power had been well executed, third persons had no right to interfere and object to it.

7. That the words "all the residue of my estate, of every name and kind," in the residuary clause of the last will and testament of B., were sufficient to pass real estate.

[Cited in Lee v. Simpson, 39 Fed. 241.]

8. That the last will and testament of B. was a complete execution of the power in the will of A., and that the premises demanded in this action passed by it to the daughter of B., the tenant.

[At law. Action by Benjamin Blagge against Sarah B. Miles. Judgment for defendant.]

This was a writ of entry, in which the demandant claimed the demanded premises as grandson and heir of Sarah Blagge. The tenant claimed under the last will and testament of Sarah Blagge. The case came before the court upon an agreed statement of facts, and was argued by George M. Mason, for the demandant, and by Rufus Choate and George S. Hillard, for the tenant.

The facts in the case, as stated in the opinion of the court, were as follows:

Mrs. Hall, by a codicil to her will, duly executed, after revoking the devise of real estate in her will, devised as follows: "Item, to Elizabeth Jarvis aforesaid (the daughter of the testatrix) I give, bequeath, and devise one undivided fifth part of all my said real estate, in trust, nevertheless, for the entire use and benefit of my daughter Sally Blagge, for and during her natural life; the said fifth part to be subject to the absolute disposal of the said Sally by her last will and testament, and the income, rents, and profits thereof to be paid over and applied to her use annually; and if the said Sally Blagge shall die without having disposed of the same, then I give and devise the remainder and reversion thereof to her heirs for ever." The will and codicil, after the death of the testatrix, were duly proved and approved by the court of probate, in 1822. In January, 1836, Mrs. Blagge procured, on her petition, a resolve to be passed, by the legislature of Massachusetts, whereby one Fitz James Price was authorized to sell a part of the real estate in Boston, devised to her by Mrs. Hall, and which had been duly set off to Elizabeth Jarvis, in trust for her, upon a division of the estate by the judge of probate, he first to give bond with sureties to invest the net proceeds of said sale in other estate, to be held by him upon the like trust, and for the same uses and purposes, as the same estate was then holden. Price accordingly, under this resolve, sold the land stated in the resolve for $13,000. With the consent of the guardian of the demandant (who is a grandson and heir to Sarah Blagge) Price afterwards invested a portion of the proceeds of this sale in certain real estate in New London, Connecticut, one parcel of which was first conveyed by the grantor, Ezra Chappell, to Sarah Blagge, and by her afterwards to Price, and the other parcel was conveyed directly to Price by the grantor, George Erving; both conveyances were upon the very same trusts stated in the will of Mrs. Hall. Afterwards, in 1839, Sarah Blagge died, having first made her will in the same year, which was duly executed, proved, and approved; and by that will, after certain specific and pecuniary legacies, she made the following devises: "To my daughter, Eliza J. Caldwell, I give and bequeath my house and land in New London, being the same, which I purchased partly of Ezra Chappell, and partly of George Erving, during her natural life; and at her decease, I give and devise said house and land to my two grandsons, Charles H. B. Caldwell and Samuel Blagge Caldwell, and to their heirs for ever. All the rest and residue of my estate, of every nature and kind, I give, devise, and bequeath as follows, namely: one third part to my daughter, Sarah Miles, and her heirs for ever; one third part to my daughter, Margaret C. Drane, and her heirs for ever; one third part to my daughter, Eliza J. Caldwell, and her heirs for ever." In point of fact, the legacies in Mrs. Blagge's will are more than sufficient to exhaust the whole of her personal estate at the time of her death and of her making her will; and she owned no other real estate, except that devised to her by the will of Mrs. Hall, and

that purchased with the proceeds of the sale under the resolve above mentioned.

The demandant claims title as an heir of Mrs. Blagge to the demanded premises, which are parcel of the real estate set off to her in the division of Mrs. Hall's estate.

The arguments for the demandant were to the following effect:

1. Benjamin Blagge became entitled, on the death of Mrs. Blagge, to the same share of her estate, to which he would have been entitled, had she died intestate, by force of the 21st section of the 26th chapter of the Revised Statutes. The will of Mrs. Blagge comes within the language of this section; it must, therefore, be presumed to come within its meaning. It is true, it was not a disposition of her own estate, she having only a life interest. But she had power to dispose of the inheritance, as fully and completely, as if it had been her own estate. If the case meets the language of the statute, it cannot be said, that it was not intended to provide for it. If this had been originally her own property, and she had settled it upon herself in trust, in the same manner, that it is now settled, the reason and equity of the statute would hardly have been more applicable. She had power to dispose of this property, and provide for her descendants by will, in the same manner as if it had been originally her own property, and she has omitted to provide for the plaintiff. It is, therefore, the very case pointed out by the statute.

2. Benjamin Blagge takes as heir, in default of appointment. The devise in Mrs. Hall's will, gives a life interest to Mrs. Blagge, with a power to appoint the reversion; and in default of appointment, a remainder to her heirs, which became vested on her death. White v. Woodbury, 9 Pick. 136; Bradly v. Westcott, 13 Ves. 445. The law is well settled, that to make a good appointment under a power, the will must refer to the power itself, or to the subject of it; for it will be inoperative, unless considered as an execution of the power. Andrews v. Emmot, 2 Browne, Ch. 297; Doe v. Roake, 2 Bing. 497; 5 Barn. & C. 520; 6 Bing. 475; 4 Bligh, 17. In Andrews v. Emmot, Lord Thurlow says, "It must be impossible to impute to the testator any other intention than that of executing the power."

The only distinction between a power over personal and real property is, that in the former, the courts will not inquire, whether the testator had other property to satisfy the terms of the will. In the latter, they will allow such inquiry. The possibility, that the testator might contemplate property to be acquired after making his will, prevents a general disposition from operating as an execution of a power over personal property, although at the time of making the will, he has no property, on which it can take effect. Jones v. Tucker, 2 Mer. 533; Webb v. Honnor, 1 Jac. & W. 352. A devise of personal

3FED.CAS.—36

property is not specific. The will being ambulatory, will embrace all, that the testator has at his death. All real property is specific; the will takes effect only on that held at the time. As where the power was to appoint £4000 consolidated bank annuities, and the testator gave £2000 consolidated bank stock, it was held to be no appointment. Nannock v. Horton, 7 Ves. 391. And even though the will contains a bequest of the very sum, which the testator has a power to appoint, it is no appointment. As where the power was to appoint £100, and the testator gave £100, the power was held not to be executed, and an inquiry was refused as to the state of the property. Jones v. Tucker, 2 Mer. 533.

Mere general terms, as a general residuary devise, however comprehensive, will not execute a power. And the more general the terms, the less evidence is there of an intention to execute a power. In Lovell v. Knight, 3 Sim. 273, the words were, "The whole of my property, both real and personal, and whatsoever I may possess at the time of my decease." The vice-chancellor says: "I apprehend it to be perfectly settled, that wherever a will is couched in such terms, as that, upon the face of it, it appears to express an intention to pass the general property, which may belong to the party making the will, such a will shall not be deemed an execution of the power with regard to any specific property."

But every gift of land, even a general residuary devise, is specific. Nannock v. Horton, 7 Ves. 391. Now we contend, that the residuary devise, in this case, contains no gift of land, nor any reference to it. There is nothing, which refers to the power, nothing necessarily descriptive of the property, over which it existed. A residuary devise "of all my estate," may as well refer to personal, as real estate. Such a devise has never been held to be specific, where the power was to appoint real or personal estate. There is nothing specific in the description.

In Langham v. Nenny, 3 Ves. 467, the power was to appoint personal estate. The testator declaring his purpose to dispose of his estate or effects, which he had, or was interested in, gave all his estate. It was held to be no execution of the power; and Lord Alvanley expressed a decided opinion, that if it had been real property, it must have gone to the heirs. The word, estate, will not always pass real property in an ordinary will. Timewell v. Perkins, 2 Atk. 102. And no case can be found, where the word "estate," has been held to be an appointment of real estate, subject to a power.

But the contrary has been held in a very modern case, that of Jones v. Curry, 1 Swanst. 67. This was the case of a power over real and personal property. The words of the will were "all my estate and effects of whatsoever denomination." The master of the rolls held, that the power was not exe-

cuted. His language is: "The words are not a specific description of any estate, or of any species of interest, but adapted to comprehend every thing, which was, and to exclude every thing, which was not a part of her property. This will contains no words, which will be without operation, unless referred to the power; on the contrary, the testatrix uses terms of generality,—'all my estate and effects of whatsoever denomination.' Though she had no real estate, she might have personal property of various descriptions, and the terms would be satisfied by passing that."

In Standen v. Standen, 2 Ves. Jr. 589, the words were, "My estate and effects of what nature and kind soever, and whether real or personal, which I am possessed of or interested in." Here the word "real" rendered the devise specific, the testatrix having no other real estate, than that held under the power. The devise of real estate would, therefore, have had nothing to take effect upon, unless construed as an execution of the power.

In Churchill v. Dibben, 2 L. Keny. pt. 2, p. 68, the words were "all the rest of my goods, chattels, estates, and estate." Here, the word "estates" could only refer to real estate, and Lord Hardwicke lays particular stress on this word. This estate had been settled upon the testatrix by herself, and a power reserved. Lord Hardwicke says: "If this had been a power over the estate of another, it would be going a great way to say, that such an estate should pass under the general residuary clause. It is not to be presumed, that such could be meant." There is, then, no intention to be inferred from the language of the residuary clause of this will, to execute a power.

But it will be contended, that the devise of the New London estate is an execution of the power. This estate is no part of the estate, which belonged to Mrs. Hall, and over which she reserved a power. The trustee was not authorized by the resolve to invest the proceeds in land out of the state. The consent of the guardian could not give such authority. The act is, therefore, illegal, and no consequence can be derived from it. But the devise of this estate contains no evidence of an intention to execute a power. The words are: "I give and bequeath my house and land lying in New London, being the same, which I purchased partly of Ezra Chappell, part of George Erving." These words exclude all idea of such intention. She speaks of it as her own property, which she had purchased. Now, it appears, that a part of this land, with the house, was conveyed by Chappell to her, that she paid for it by her own notes, and mortgaged it back. She then conveyed it in trust to Price, reserving a power to dispose of it by will. The Erving lot was conveyed, not to her, but to Price, in trust for her, reserving a power to dispose of it by will in fee simple. Over the New London estate there were reserved two distinct powers. In the Chap-

pell lot she had an interest and a power. It would, therefore, pass by force of the interest. This is the language of the authorities. Clere's Case, 6 Coke, 18. This case has always been held an authority to the following effect, as laid down by Hobart in the Commendam Case: "If an act will work two ways, the one by an interest, the other by an authority or power, and the act be indifferent, the law will attribute it to the interest, and not to the power." Hob. 39. The same rule is laid down in Parker v. Kett, 12 Mod. 469, and cited by Kenyon, M. R., in Andrews v. Emmot, 2 Browne, Ch. 303. To apply these authorities to our case, Mrs. Blagge, by the deed of Chappell, was seised of this lot in fee. She conveys it to the use of her will, reserving a power. She had then an interest and a power, and the land passed by force of the interest, the power not being referred to. The lot conveyed by Erving was not conveyed to her, as she evidently supposes, but to Price in trust for her, reserving a power to dispose of it by will. This, therefore, cannot pass by force of the devise, she having no devisable interest. Is it an execution of the power? All such intention is negatived by the language of the devise, which speaks of it as her own property, which she had purchased. She was evidently under a mistake in supposing, that this lot had been conveyed to her.

In Denn v. Roake, 5 Barn. & C. 720, Sarah Trimmer, being seised in fee of a moiety of certain premises in the city of London and county of Surrey, and tenant for life in the other moiety, with a power to appoint the same by will, devised the same, as follows: "I hereby give and devise all my freehold estate in the city of London and county of Surrey, or elsewhere, to my nephew, John Roake, on condition, that out of the rents thereof he do, from time to time, keep such estates, in proper and tenantable repair." It was held, that the devise did not operate as an appointment under the power over the one moiety, but only passed the moiety of which she was seised. The court say: "It may be, that she intended her will to work by her interest in the tenements. It may have happened, that she had entirely forgotten the settlement, and supposed, at the making of her will, that she was then seised of the entirety."

Now, in our case, it is clear, that Mrs. Blagge supposed she was seised of the entirety, and intended the will to work by her interest. Powell v. Loxdale, 2 Barn. & Ald. 291.

But supposing these powers to be executed, can any intention be inferred to execute another power over another estate? The powers, reserved over the New London estate, are not the powers reserved in Mrs. Hall's will, nor over the same estates. They are reserved by different persons, over different estates by different instruments. If

the powers over the New London estate are executed, it is by inferring the intention from a devise of it. But this inference cannot be extended to other estates not mentioned.

A disposition of part of the subject of a power, is no disposition of the other part, even though there be connected with it a general devise.

In Anson v. Lee, 4 Sim. 364, the testator devised all his real estate, also his mansion-house at Hartwell, which was part of property subject to a power. He had two roods and eighteen perches of his own land; it was held, that the last only passed by the general devise.

In Hughes v. Turner, 3 Mylne & K. 666, the master of the rolls states it to be well settled, that referring to part, or one of the subjects of a power, does not execute it as to those not referred to. In this case, Walker v. Mackie, 4 Russ. 76, is overruled. Lewis v. Lewellyn, 1 Turn. & R. 104; Napier v. Napier, 1 Sim. 28.

But no power was reserved by the resolve. It says nothing of powers. Powers and trusts are essentially different. Powers are optional. 1 Sugd. Powers, 173. The substitution of a trust, therefore, does not substitute a power. The effect of the resolve, if it had any, was to extinguish the power as to that portion of the estate, which it affected. Powers may be extinguished by a release, or fine and recovery. West v. Berney, 1 Russ. & M. 431. The resolve is unconstitutional. No case has gone this length. Mrs. Hall devises her estate in trust, reserving a power. Can the legislature destroy this power, and substitute it over another estate? Can they thus control and interfere with a testator's disposition of his estate? It impairs the obligation of a contract.

In the case of Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 698, it is said: "A power of appointment, reserved in a marriage settlement, either to a party or a stranger, to appoint uses in favor of third persons, without compensation, is an instance of a contract." A grant is a contract executed. A devise is a species of conveyance. Cowp. 305.

A devise, says Cruise (Dig. Devise, c. 1, §§ 1, 10), is considered not so much in the nature of a testament, as of a conveyance, declaring the uses, to which the land shall be subject, after the death of the devisor. This devise is a conveyance to uses. If then this is a contract, the resolve is clearly unconstitutional, since it destroys the subject matter, or transfers it to another. In the bill of rights (section 31), it is declared: "The legislative department shall never exercise the executive and judicial powers, or either of them."

It appears, that courts of chancery will authorize the trust estate of a minor to be changed from personal to real. Ashburton v. Ashburton, 6 Ves. 6. This, then, is a judicial power, and the legislature have, therefore, in passing this resolve, exercised judicial power. The case of Rice v. Parkman, 16 Mass. 324, does not go the length of this case. That was the case of a resolve authorizing the real estate of a minor to be converted into a personal estate. The power to authorize the estate of minors to be sold had long been conferred on the courts. If it was not judicial, it could not be exercised by them. If it was, it could not be exercised by the legislature.

The arguments for the tenant were to the following effect. The demandant is not entitled to a share of Mrs. Blagge's will by virtue of the Revised Statutes of Massachusetts (chapter 62, § 21), because that provision is applicable only to cases, in which the testator has an inheritance in the estate, and not a mere power of appointment. In default of a will, the heirs of Mrs. Blagge would have taken the estate by purchase, and not by descent, a power not being a descendible inheritance.

The resolve was not an unconstitutional exercise of power by the legislature of Massachusetts, it being a ministerial, not a judicial act. Wilkinson v. Leland, 2 Pet. [27 U. S.] 627. Besides, the question of constitutionality has nothing to do with the issue, which is the construction of a devise. If the power has been duly executed by Mrs. Blagge, the demandant has no title to the property under her will; and both parties are estopped to contest the constitutionality of the resolve, since it was passed at the request of Mrs. Blagge, under whom they both claim, the demandant as heir, and the tenant as devisee.

Was the will of Mrs. Blagge a due execution of the power of appointment under the will of Mrs. Hall? This depends upon the intention of the testatrix, to be gathered from the tenor and purport of the whole will. It is not necessary, that the power should be expressly referred to, or that the estate subject to it should be expressly described. It is sufficient, if the donee of the power uses words, which would have no operation except as an execution of the power. 4 Kent, Comm. 334; Denn v. Roake, 6 Bing. 475, 2 Bing. 497, 5 Barn. & C. 720. Where a devise of real estate is made, and the testator has no real estate, on which it can operate, but has a power of appointment over some real estate, which answers to the description, if any, there the power is held to be well executed, otherwise the words would be inoperative. 1 Sugd. Powers, 394, 395; Standen v. Standen, 2 Ves. Jr. 588; Jones v. Curry, 1 Swanst. 66; Napier v. Napier, 1 Sim. 28.

The devise is, "all the rest and residue of my estate of every nature and kind." Had she said, "real and personal," instead of "of every nature and kind," the power would clearly have been executed. For, since she had no other real estate, on which the devise could operate, it would fall distinctly under

the rule. The words used are sufficient to pass real estate, supposing the testatrix to have had a property in, and not a mere power over it. 2 Hill. Dig. p. 29; Barnes v. Patch, 8 Ves. 604; Doe v. Langlands, 14 East, 370.

The only question to be asked is, did not Mrs. Blagge, intend to dispose of her real estate, by the clause in question? This intention is to be gathered from the whole will, and looking at it, as a whole, there are various considerations, which show, that such must have been her intention. In the case of each of the residuary devisees she makes use of words* of inheritance, "heirs and assigns," usually applied to real estate, and not to personal property. Bullard v. Goffe, 20 Pick. 258. This is made more decisive from the fact, that these words are omitted in giving the various pecuniary legacies, mentioned in the former part of the will, showing the distinction between the two kinds of property to have been present in her mind.

One part of the will may be interpreted by the other. In the residuary clause, she says, "my estate of every nature and kind," and, in a previous clause, she uses a precisely similar expression in a specific devise to Mrs. Caldwell, "my house and land lying in New London." This is unquestionably a sufficient execution of the power, so far as that estate is concerned, and as a test to discover the intention, the similarity of the expressions in the two cases is a very strong argument to prove, that she meant to convey the real estate by the residuary clause. The force of this argument is attempted to be met by the counsel for the demandant on these grounds; because the resolve does not attach the power to any substituted estates after the sale; and because the investment in property in another state was not warranted by the resolve, and was therefore void. The first reason seems unfounded in fact, since the substituted estates, by obvious and elementary principles of law, are to be held upon the same trusts, as the property they represent, and are subject to the same equities, and the language of the resolve says so in so many words. As to the other objection, it is one, into which all inquiry may be waived, so far as the present issue is concerned, because the investment, whether right or wrong, was adopted by Mrs. Blagge, and third persons have no right to object; and the intent to convey, under the power is perfectly apparent; and the argument is just as strong, whether the investment in question be right or wrong. See Dillon v. Dillon, 1 Ball & B. 77.

A variety of cases have been cited in favor of the demandant, and some seem strongly in point. But it is impossible to extract from them a formula or principle, which shall decide all cases of the construction of wills. Each case must rest upon its own facts, and a slight change in facts may vary the decision in two cases, preserving the same principle in both. The case of Walker v. Mackie, 4 Russ. 76, is as strongly in favor of the tenant, as any one, that has been cited, is in favor of the demandant. Sir Edward Sugden, a very high authority, speaks of the number of instances, where the intention has been defeated by the rule distinguishing power from property, and by courts adopting a strict construction with a view to establish a certain rule; and his opinion is, that in many cases, the intention might have been carried into effect, without breaking in upon the general rule. It is evidently his opinion, that the cases of Lewis v. Lewellyn, 1 Turn. & R. 104; Napier v. Napier, 1 Sim. 28; Jones v. Curry, 1 Swanst. 66; and Lovell v. Knight, 3 Sim. 275,—were not rightly decided; and that the dispositions of property in these cases might have been supported, without infringing upon the principle correctly established by the cases of Wallop v. Portsmouth, 1 Sugd. Powers, 394; Churchill v. Dibben, Id. 407; Standen v. Standen, 2 Ves. Jr. 589; Morgan v. Surman, 1 Taunt. 289. In any conflict of authority, the great reputation of Sir Edward Sugden, and his profound investigations into this branch of the law, would give his opinion greater weight in our courts, than those of the judges, by whom the cases in question were decided. The authority of Jones v. Curry is greatly shaken by his observations. See 1 Sugd. Powers, pp. 418–429. The policy of the law in modern times, and in our own country, is to introduce liberal rules of construction, to clear away technical rubbish, and to diminish the interval, which separates real and personal property. Courts of law lean in favor of the execution of a power. See Warner v. Howell [Case No. 17,184]; Lippet v. Hopkins [Id. 8,380;] Archer v. Deneale, 1 Pet. [26 U. S.] 588; Bullard v. Goffe, 20 Pick. 258.

STORY, Circuit Justice. This cause has been very ably argued upon both sides. It turns principally upon a question, which rarely occurs in our jurisprudence, the due execution of a power of appointment; and the learning, appropriate to it, has been fully brought before the court in the course of the present discussion. The facts in substance are as follows. (Here the judge recapitulated the facts as before stated, and then proceeded.)

The main question, therefore, is, whether, under the circumstances, Mrs. Blagge, by the devise in her will, has duly executed the power, given her by the will of Mrs. Hall. If she has, then the demandant has no title whatsoever; if she has not, then he is entitled to recover in the suit.

Some other questions have, however, been raised at the argument, which should be disposed of before we proceed to that, which constitutes the main hinge of the controversy.

And, first, it is said, that even if Mrs. Blagge's will is a due execution of the power, the demandant is entitled to a share of her estate under the Revised Statutes of Massachusetts of 1835 (chapter 62, § 21), as a lineal descendant of Mrs. Blagge, who was unprovided for in her lifetime, and was unintentionally and by mistake or accident omitted to be named as a devisee in her will. The language of the statute is as follows: "When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to, if he had died intestate, unless they shall have been provided for by the testator in his lifetime, or unless it shall appear, that such omission was intentional, and not occasioned by mistake or accident." The argument is, that this clause is equally applicable to cases, where the testator has a power of appointment of the estate, to dispose of the inheritance, as well as to cases, where it is his own estate in fee. It does not appear to me, that this argument is maintainable. The language of the section seems to me clearly to point exclusively to a case, where the testator has an inheritance in the estate, and not merely a power of appointment over it. It supposes a case, where the omitted descendant would and could take a title by descent, as of an heritable estate of the testator, and under him, as his heir, in case of his dying intestate. But no person can claim an inheritance, as heir, in case of intestacy, where the ancestor has a power only, and not an interest. The party, if he can take at all, must take as an appointee under the power, and not as heir. A power is not a descendible inheritance. The property, which he is to dispose of, is in no just sense vested in the appointor. It is not an interest, right of, or title to, the property; but a mere authority given to the donee of the power, to be exercised over the property in a manner, and to an extent, which he does not otherwise possess. And such has been the uniform construction from the earliest period of the law on this subject. See Co. Litt. 342b, Butler's note 1; 1 Chance, Powers, §§ 1, 2; 2 Chance, Powers, § 1632; Co. Litt. 265b. The present power is technically a power in gross; that is to say, the estates, to be raised by it, do not fall within the compass of the estate for life devised to Mrs. Blagge. Co. Litt. 342b, Butler's note 1; Sugd. Powers (6th Ed.) § 4, pp. 43, 44. A power to dispose of an estate by an appointment among third persons in fee, may be given to a mere stranger; and it would certainly be utterly without the intent of the statute to create an inheritance in the appointor in the execution of the power, which should give his descendants an interest in the estate, upon which the power is to operate. It can make no difference in point of law, that the power, if executed, might be by an appointment among his own children or descendants. This would not change the nature of the power, but only its objects.

Then, as to another objection, which has been urged, that the resolve is an unconstitutional exercise of power by the legislature, because it is usurping the functions of the judiciary, contrary to the provisions of the bill of rights of the constitution of Massachusetts, which declares, that "the legislative department shall never exercise the executive and judicial powers, or either of them." Assuming that such a resolve might be construed, under some circumstances, to be an exercise of judicial power, it would be difficult to apply the doctrine to a case like the present, where it is passed, not in invitum, but at the solicitation of the very person, who, under the power, possessed a complete dominion over the disposal of the entire property. But, after the exercise of this authority by the legislature for more than sixty years, (for such, I am persuaded, has been the practice,) in very numerous cases of a like or an analogous nature, without any objection by the parties in interest, and with the entire acquiescence of the public, it is not, perhaps, too much to say, that it would be still more difficult to treat it as an exercise of judicial power, in the sense of the constitution. The case of Rice v. Parkman, 16 Mass. 326, seems to me directly in point, and establishes, that an authority, granted by the legislature to transmute real property into personal property, for purposes beneficial to the parties interested therein, is not properly the exercise of a judicial power; for it is not a case of controversy between party and party, nor is there any decree or judgment, affecting the title to the property. In short, the court, on that occasion, held it to be, not a judicial act, but a mere ministerial act. The case of Wilkinson v. Leland, 2 Pet. [27 U. S.] 627, 660, goes a great way to establish the same doctrine. There, an act of the legislature of Rhode Island, confirming a sale made by a foreign executrix, for the payment of debts of the testator, was held to be, not a judicial act, but an exercise of legislation; a legislative resolution, and not a decree. The case of Ashburton v. Ashburton, 6 Ves. 6, where the lord chancellor, upon the petition of a minor to have some of his money laid out in the purchase of lands, authorized the purchase to be made, by no means shows, that the act was exclusively judicial. It seems, being upon petition, to have been an act by the lord chancellor, not as a judge, but as the representative of the crown, as parens patriae, having the custody and care of the persons and property of infants. Besides: it is one thing to assert, that a power may be delegated and exercised by a court or judge; and quite another thing to assert, that every power, delegated to, or exercised by a court or judge is judicial, and not ministerial. Many powers, exercised by courts and

judges, are in no accurate sense judicial; as, for example, the power to make rules for the due order and arrangement of business. But it is the less necessary to dispose of this question absolutely, and therefore I give no positive opinion upon it; because, if the power has been duly executed by Mrs. Blagge, whether the resolve be constitutional or not, makes no difference in this case, since the demandant has no title whatsoever to the property under her will; and the constitutionality of the resolve is not contested by those, who alone are donees under the power.

Having disposed of these points, we may now advance to the main question involved in this controversy. Was the will of Mrs. Blagge a due execution of the power contained in that of Mrs. Hall? And this, after all, I take to depend upon her intention, as expressed in and derived from the language and object of the will of Mrs. Blagge. There was a long struggle in Westminster hall upon the point, whether in wills, the intention of the testator, as gathered ex visceribus testamenti, was to be followed in the interpretation of devises, or whether the technical construction of law, given to certain phrases, was to prevail over the intention. That struggle, at least, since the decision in Perrin v. Blake, 4 Burrows, 2579; Fearne, Cont. Rem., by Butler (9th Ed.) p. 156,—seems to have terminated. It is now admitted to be established, as the general rule, that the intention of the testator is the polestar to direct the court in the interpretation of wills, and that technical words and set phrases are controlled by, and do not control, that intention, when clearly expressed or positively ascertained. The consequence is, that decisions upon particular wills are of far less consequence now, than they formerly were supposed to be; unless, indeed, where the leading provisions are almost identical, and the facts substantially alike. They now furnish, not so much authorities, as analogies, by which to interpret the words of wills in new cases.

I apprehend, that similar doctrines now generally prevail in regard to the execution of powers, and especially in regard to their execution by last wills and testaments. The main point is, to arrive at the intention and object of the donee of the power in the instrument of execution; and, that being once ascertained, effect is given to it accordingly. Bennett v. Aburrow, 8 Ves. 609. The authorities upon the subject may not all be easily reconcilable with each other. But the principle furnished by them, however occasionally misapplied, is never departed from, that if the donee of the power intends to execute, and the mode be, in other respects, unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree, that the intention to execute the power must be apparent and clear, so that the transaction is not fair-

ly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree, that it is not necessary, that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient, that it shall appear by words, acts, or deeds, demonstrating the intention. This was directly asserted, not only in Sir Edward Clere's Case, 6 Coke, 18; but it was positively affirmed in Scrope's Case, 10 Coke, 143b, 144, where the reason of the rule is stated, "Quia non refert, an quis intentionem suam declaret verbis, an rebus ipsis, vel factis." On the other hand, to use the language of Lord Chief Justice Best, in Doe v. Roake, 2 Bing. 497, 504, "No terms, however comprehensive, although sufficient to pass every species of property, freehold or copyhold, real or personal, will execute a power, unless they demonstrate, that a testator had the power in his contemplation, and intended by his will to execute it."

Three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: (1) Where there has been some reference in the will, or other instrument, to the power; (2) or a reference to the property, which is the subject, on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power. Langham v. Nenny, 3 Ves. 467; Bennett v. Aburrow, 8 Ves. 609, 616. It seems unnecessary to refer at large to the cases, which establish these propositions. They will be found collected, generally, in Mr. Chance's Treatise on Powers (volume 2, c. 13, §§ 1591–1714), and in Sir Edward Sugden's Treatise on Powers (volume 1, c. 6, § 2, p. 257 etc.; Id. § 7, p. 373, etc.; Id. § 8, p. 430, etc.), and in the opinion of the court, delivered by Lord Chief Justice Best, in Doe v. Roake, 2 Bing. 497. Lord Chief Baron Alexander, in delivering the judgment of the judges, in the house of lords, in Denn v. Roake, 6 Bing. 475, reversing the decision in the same case, in 2 Bing. 497, and affirming that of the king's bench (5 Barn. & C. 720), has enumerated the same classes of cases; and he has added, that in no instance has a power or authority been considered as executed, unless under such circumstances. Whether this be so, or not, it is not material to inquire; for there is no pretence to say, that, because no other cases have as yet occurred, there can be no others. That would, in fact, be to say, that the cases governed the general rule as to intention, and not the rule the cases. Lord Chief Justice Best has put these classes of cases upon the true ground. They are instances of the strong and unequivocal proof, required to establish the intention to execute the power; but they are not the only cases. Doe v. Roake, 2 Bing.

504. On the contrary, if a case of clear intention should arise, although not falling within the predicament of these classes, it must be held, that the power is well executed, unless courts of justice are at liberty to overturn principles, instead of interpreting acts and intentions. I entirely agree with Lord Chief Justice Best, in his remark in Roake v. Denn, 4 Bligh (N. S.) 22, that, "Rules with respect to evidence of intention are bad rules, and I trust I shall live to see them no longer binding on the judges." The lord chancellor, (Lord Lyndhurst,) said, that "It has been settled by a long series of decisions from the case, which has been referred to in the time of Sir Edward Coke (Sir Edward Clere's Case, 6 Coke, 18) down to the present time, that if the will, which is insisted on as an execution of the power, does not refer to the power, and if the dispositions of the will can be satisfied without their being considered to be an execution of the power, unless there be some other circumstances to show, that it was the intention of the devisor to execute the appointment by the will, under such circumstances the courts have uniformly held, that the will is not to be considered as an execution of the power." Certainly it is not. But then this very statement leaves it open to inquire into the intention under all the circumstances; which seems to me to be the true and sensible rule upon the subject; and when that intention is thus once ascertained, it governs. So, it was expressly held, in Pomery v. Partington, 3 Term R. 665; and in Griffith v. Harrison, 4 Term R. 737, 748, 749, the court expressly repudiated the notion, that any technical exposition was to be given to the words of a will, executing a power; and held, that the intention was to be collected from the words according to the ordinary and common acceptation thereof. And again, in Bailey v. Lloyd, 5 Russ. 330, 341, the court held, that the question of the execution of a power by a will, was a mere question of intention, and that intention was to be collected, not from a particular expression, but from the whole will. See 4 Kent, Comm. (4th Ed.) Lecture 62, pp. 333, 334.

Now, Sir Edward Clere's Case, 6 Coke, 18, is not only unquestionable law, and has so been always held; but it affords a strong illustration of the true doctrine. In that case, it was held, that the power was well executed, notwithstanding it was not referred to, because otherwise the devise in the will would be inoperative and void. The testator had no estate in the property devised, but only a power over it; and so, ut res magis valeat, quam pereat, it was held, that he intended to execute the power. Nor is there any objection to the doctrine of Lord Chief Justice Hobart, in the Commendam Case, Hob. 159, 160, that if an act will work two ways, the one by an interest, the other by an authority or power, and the act be indifferent, the law will attribute it to the interest, and not to the power. This is but saying, in other words, that where the terms of a devise are perfectly satisfied and inoperative, without any reference to the execution of a power, by working on the interest of the testator in the land, there it shall not be deemed, that he intended to execute the power; but merely to pass his interest. This proceeds upon the plain ground, that there is nothing in the will, which shows any intention to execute the power; and in cases of doubt the court cannot deem it a good execution of the power. Id.

Sir Edward Sugden (1 Sugd. Powers, c. 6, § 7, pp. 402, 428) has critically examined and commented upon all the leading authorities; and it appears to me, that his criticisms (and he is himself a very high authority upon this subject) are entirely well founded. The courts have, indeed, as he abundantly proves, proceeded in some cases upon very narrow and technical grounds, and in others have adopted a more liberal and just interpretation; and the cases do not all well stand together. The rule of ascertaining the intention, however, has been recognized at all times; and, as Lord Kenyon has well observed, in Pomery v. Partington, 3 Term R. 674, 675, if the judges, in construing the particular words of different powers, have appeared to make contradictory decisions at different times, it is not, that they have denied the general rule; but because some of them have erred in the application of the general rule to the particular case before them. In a conflict of authorities, I own, that I should choose to follow those, which appear best founded in the reason and analogies of the law. But, in cases of wills, where the intention is to govern, no authorities ought to control the interpretation, which the court is called upon to make, unless all the circumstances are the same in both cases, and the ground of interpretation in one is entirely satisfactory to the mind, as applied to the other. If I were compelled to decide between the cases of Wallop v. Portsmouth, 1 Sugd. Powers, p. 394, c. 6, § 7; Hurst v. Winchelsea, 2 Ld. Keny. 444, by Harmer; Standen v. Standen, 2 Ves. Jr. 589; Lewis v. Lewellyn, 1 Turn. & R. 104; and the case of Jones v. Curry, 1 Swanst. 66,—if there be any dissonance between them, I should much incline to follow the former. But, in my view, all these cases stand upon their own particular circumstances, and neither is exactly like the present.

We must dispose of this case, then, upon principle; for I cannot admit, that it is governed by any positive controlling authority, or that it will trench upon any established doctrine, whichever way it is decided.

But before proceeding to discuss the terms of this devise, as an execution of the power, it is indispensable to dispose of an argument greatly pressed at the bar, and that is, that the New London estates, in no proper sense, fall within the scope of the power, which

only applies to the original devised property, and not to these substituted New London estates; first, because the resolve itself does not attach the power to any substituted estates after the sale; and secondly, if it does, still the investment in the New London estates, being out of the state, was not authorized by the resolve, and, therefore, cannot be deemed an execution of the power, but is an utterly void act. I cannot accede to this interpretation of the terms of the resolve. The language of it is, that Price, the trustee, is "to invest the net proceeds of said sale in other real estate, to be held by him upon the like trusts, and for the same uses and purposes as the estate above described is now holden." It seems to me impossible to entertain any real doubt, that the substituted estate was to be held upon precisely the same trusts, as the original estate, by the will of Mrs. Hall. The original estate was held expressly in trust for the use of Mrs. Blagge during her natural life, subject to her absolute disposal by her last will and testament, and if she should die without having disposed of the same, then the remainder and reversion to be to her heirs for ever. The language, then, of the resolve, is not only appropriate to fasten upon the substituted estate the like trusts, uses, and purposes as were attached to the original estate; but I am at a loss to understand, what other words could have been more directly expressive for this purpose. The power was attached to the original estate, and was to be served out of the original trust for the uses and purposes therein stated; and the moment the power was executed, it created a direct trust and use in favor of the appointees. The case of Wallop v. Portsmouth, 1 Sugd. Powers (6th Ed.) p. 394, c. 6, § 7, art. 34, seems to be strongly in point.

The other part of the argument may have a better foundation in law. It may be true, that the trustee had no right to invest the proceeds of the sale in any real estate out of the commonwealth of Massachusetts; and yet, if that investment has been adopted by the appointees under the power, and the power has been well executed, third persons have no right to interpose and object to it. It amounts, at most, but to a wrongful conversion of trust property, which, however, may, at the election of the cestui que trust, be followed, and the trusts attached thereto in the hands of the persons, holding the property. Nothing is more common in courts of equity, than for the cestui que trust, upon a wrongful conversion of the trust fund to follow it in its new forms, and hold it subject to the original trust. 2 Story, Eq. Jur. §§ 1258–1266, and cases there cited.

But it is wholly unimportant, in the present case, whether the investment was rightful or wrongful on the part of the trustee, so far as the present controversy is concerned. It was adopted and sanctioned by Mrs. Blagge, as an investment properly made, and upon the identical trusts created by the will of Mrs. Hall, and authorized in the substituted estate by the resolve. In making her own will, and therein devising the New London estate, Mrs. Blagge manifestly intended to execute the power reserved to her, (in conformity to the original trusts,) contained in the deeds of these estates to Price. She had no other right or title in or over the same to give effect to her devise; and this devise must, therefore, if at all, take effect solely as an execution of this power over the substituted property, as to this estate; and in this respect, then, the case falls directly within the rule already adverted to. It is a case, where, although the power is not referred to in terms, yet the subject matter is expressly disposed of, and the will is void and inoperative, except as an execution of the power.

The whole question is then narrowed down to the mere consideration, whether Mrs. Blagge intended a mere partial execution of the power, quoad the New London estate, or meant a full and entire execution of the whole power over all the property, to which it was attached. She speaks of this estate indeed as her own estate, "my house and land lying in New London;" but this does not change the proper interpretation of the words. The language is precisely that, which would ordinarily be used by the donee of a power, absolutely to dispose of the whole property, although without any interest in the property. Lord Loughborough, in Standen v. Standen, 2 Ves. Jr. 589, alluded to such a form of disposition, as not producing the slightest difficulty in construing the devise to be an execution of a power; and this is certainly now the received doctrine. But the true bearing of this language in this clause of the will of Mrs. Blagge most strongly applies to illustrate her meaning in the residuary clause, to which I shall presently allude. She treats the New London estate as her own property; but it was her own in the same sense, and in that only, as the other part of the unsold property, devised to her by the will of Mrs. Hall, that is, her property, as possessing the absolute power to dispose of it by her own will.

Now, immediately after the devise of the New London estate comes the residuary clause. "All the rest and residue of my estate of every nature and kind, I give, devise, and bequeath, as follows: viz. one third part to my daughter, Sarah Miles, and her heirs for ever; one third part to my daughter, Margaret C. Drane, and her heirs, for ever; one third part to my daughter, Eliza J. Caldwell, and her heirs and assigns, for ever." I do not dwell upon the circumstance, that here the language used, "heirs and assigns," applies peculiarly and emphatically to a devise of real estate; nor do I contrast it with the peculiar language in the numerous pecuniary legacies, named in

the preceding part of the will, where the words "heirs and assigns" are wholly omitted. Nor do I rely upon the fact, that the personal estate of Mrs. Blagge at her death, was insufficient to discharge these legacies; for that circumstance alone would not affect the present question; as, from the nature and fluctuation of personal estate, the amount, which would be assets at the death of the testatrix, must always be somewhat conjectural; and, on that account, has not, like real estate, been supposed to be within the contemplation of the testatrix as a specific bequest. Sugd. Powers (6th Ed.) c. 6, § 7, arts. 32, 33, pp. 393, 394; Andrews v. Emmot, 2 Brown, Ch. 297; Standen v. Standen, 2 Ves. Jr. 594; Doe v. Roake, 2 Bing. 497, 510; Jones v. Curry, 1 Swanst. 66, 71, 72.

But what may be relied upon is this, that Mrs. Blagge died possessed of no other real estate than that, which was attached to the power, and disposable by her under the same. Under such circumstances, if instead of the words "the residue of my estate of every name and nature," she had said, "the residue of my estate, real as well as personal," it was admitted at the argument, and, indeed, is conclusively established by the authorities, that the residuary clause would have operated upon the real estate, subject to the power, since in that way, and in that way alone, could it be operative. Sugd. Powers (6th Ed.) c. 6, § 7, arts. 33–38, pp. 393, 394. And, therefore, to effectuate the intent, it must be construed as a due execution of the power. The case of Standen v. Standen, 2 Ves Jr. 589, which was affirmed in the house of lords, would be decisive on this point; and, indeed, it is but following out the principle of Sir Edward Clere's Case, 6 Coke, 18. See, also, Doe v. Roake, 2 Bing. 509, 510.

There is no doubt, that the words "all the residue of my estate of every nature and kind," in Mrs. Blagge's will, are sufficient to pass real estate; and if she had left any interest in real estate, in her own right, that interest would have passed by the devise. This doctrine is clear upon the general principles applied to the interpretation of wills, and is also fully borne out by the authorities. It was admitted in Jones v. Curry, 1 Swanst. 66, 72, 73, and recognized in the very recent case of Saumarez v. Saumerez, 4 Mylne & C. 340. See, also, Church v. Mundy, 15 Ves. 396, and Doe v. Morgan, 6 Barn. & C. 516. Still, however, as the word "estate" is nomen generalissimum, it may be satisfied by the mere bequest of personal property, if the testator has no real estate, upon which it can operate; and, therefore, a residuary clause of this sort is not, per se, decisive as an execution of a power, as it may operate without touching real estate in the power of the party, but not in his interest.

But the view, which I take of the clause, is this, that it may include real estate, if the testator has any; and if the language then may justly admit of this interpretation, then we have a right to look to see, whether the testatrix did not, from other parts of the will, naturally, if not necessarily, mean to apply the residuary clause to real estate. If she did so intend, and it can be clearly seen, from the other provisions in the will, then it is the duty of the court to carry that intention into effect; and if it cannot be, except as an execution of the power, then it amounts to a due execution thereof. Now, it is precisely here, in my judgment, that the whole stress of the case lies. When I see, that Mrs. Blagge has, in the preceding clause of the will, executed the power, specifically, over certain real estate within the scope of the power, calling it "my house and land," and then immediately adding, "all the rest and residue of my estate of every nature and kind," it is plain to me, that she contemplated all the real estate within the scope of the power, as her own estate, and subject to her own absolute disposal, and that she intended to dispose of all of it by her will, by the very words, which she has used. I am not bold enough to fritter away such an intention, coupled with such acts, by resorting to any technical niceties and refinements. They partake too much of subtlety, and artificial distinctions, (and I say it with the utmost deference for other judgments,) to suit a just or even a reasonable administration of private justice. The case of Walker v. Mackie, 4 Russ. 76, was one of far less stringent circumstances; and yet the then master of the rolls (Sir John Leach) held the will a good execution of the power. In that case, the testatrix had power to appoint, by will, a certain leasehold estate, and certain 3 per cent. stock, standing in the name of the accountant general in chancery, she being entitled to both during her life. By her will, after certain pecuniary legacies, she gave "All the rest and residue of her bank stock to her daughter A., with her wearing apparel, goods, and chattels of every kind whatsoever, and all other property she possessed at the time of her decease, excepting £50 of her bank stock, which she gave thereout to her executors." It was proved, that she had no bank stock, nor any stock whatsoever, except the stock in court. The master of the rolls held, that the will was a due execution of the 3 per cent. stock, and also of the leasehold estate. I am aware, that in a later case (Hughes v. Turner, 3 Mylne & K. 666, 697), his successor (Sir C. C. Pepys) disapproved of that decision. But I confess, that I am not prepared to join in this disapproval; and it be not reconcilable with Webb v. Honnor, 1 Jac. & W. 352, or rather with a dictum of Sir Thomas Plumer in that case, I am not at all disposed to surrender to the authority of the latter. See Sir Edward Sugden's remarks on this latter case. 1 Sugd. Powers (6th Ed.) c. 6, § 7, art. 28, p. 390. Be this as it may, the present case differs

from all these three cases in its circumstances, and, therefore, is not governed by the authority of either of them, whatever may be their weight.

The judgment of Sir Thomas Plumer, M. R., in Jones v. Curry, 1 Swanst. 66, has been greatly relied on, at the argument, as directly in point against the present case being a due execution of the power. I have already had occasion to suggest, that it is not so in point; but is fairly distinguishable in its circumstances. The language there was not the same, nor the power the same, nor the facts the same. There seems to me to be great force in the criticism of Sir Edward Sugden on that case. If the words were not sufficient to pass real estate, (which they clearly were,) the point did not arise. If they were sufficient, the case does not appear to have been well decided; for if they were sufficient to pass real estate, and the testatrix had none but under the power, then it might plainly be presumed, that she intended to pass real estate by her will; and if so, it could only be by an execution of the power. Sugd. Powers, (6th Ed.) c. 6, § 7, p. 425. Besides; Sir Thomas Plumer, in that case, strongly relied upon the fact, that there was no language in the will of the testatrix, which showed any intention to execute the power, even in relation to the personalty. There was no clear case of an intended part execution of the power. Here, the contrary is established; and the testatrix has executed her power as to the New London estate. And I cannot but consider the language of Sir William Grant, in Bennett v. Aburrow, 8 Ves. 609, 616, to contain the true doctrine; and it is strictly applicable to the present case. "This, (said that great judge,) is always a question of intention, whether the party meant to execute the power, or not. Formerly it was sometimes required that there should be an express reference to the power. But that is not necessary now. The intention may be collected from other circumstances; as, that the will includes something the party had not otherwise, than under the power of appointment; that a part of the will would be wholly inoperative, unless applied to the power."

Upon the whole, my opinion is, that the will of Mrs. Blagge was a complete execution of the power, as to the premises in question; and, therefore, that judgment ought to be entered for the tenant.

NOTE [from original report]. It may not be unimportant to state, that all these refined and subtile distinctions, in relation to the execution of powers, are now swept away in England by the statute of wills (7 Wm. IV., and 1 Vict. c. 26, § 27), which has declared, that a general devise of real or personal estate, shall operate as an execution of a power of the testator over the same, unless a contrary intention shall appear on the will. The doctrine, therefore, has at last settled down in that country, to what would seem to be the dictate of common sense, unaffected by technical niceties. J. S.