PETITION OF MORGAN G. POST & EDWIN A. POST *et ux.* for an Opinion of the Court.

The General Assembly may authorize a guardian or trustee to convert realty in his hands into personalty if such conversion is for the benefit of the ward or the *cestui.*

The action of the General Assembly in so authorizing a guardian or trustee is *primâ facie* valid.

Such action is to be judged from the facts and circumstances existing when the action is taken, not from those subsequently developed.

Hence when the General Assembly, in 1844, authorized such a conversion into personalty of real estate in the then town of Newport:

*Held,* that the act of the General Assembly was valid, as it may have decided, after inquiry and consideration, that the value of realty, so situated, had reached its culmination and was liable to decline.

If, however, the General Assembly should authorize such a conversion when the result must clearly and necessarily be to sacrifice the interests of those entitled to remainders and reversions, and to favor life-tenants: *Query,* whether the authority given could be sustained.

The statute quieting possessions runs against *cestuis que trustent* in favor of vendees, though it does not usually run against the *cestuis* in favor of the trustee.

*Cestuis que trustent* who, with full knowledge of the facts, without constraint, and being under no disability, have released their interests in the trust estate, and received the consideration of the releases, are estopped from denying the validity of the transfer, to perfect which their releases were given.

CASE STATED for the opinion of the court under Public Laws R. I. cap. 563, § 16, of April 20, 1876, as follows:

" The undersigned respectfully state the following case for the opinion of the court under the provisions of the Public Laws R. I. cap. 563, § 16, of April 20, 1876.

" Morgan Gibbes Post, of the city, county, and State of New York, has heretofore entered into a contract, which is still in force, with Edwin A. Post and Margaret O. Post, wife of said Edwin A. of the said city, county, and State of New York, to purchase from the said Edwin A. and wife a lot of land, situated in Newport, in the county of Newport, and State of Rhode Island, being a part of the Perry Farm, so called; and the said Edwin and wife, by the terms of said contract, are bound to convey the said lot of land to the said Morgan Gibbes Post by a good and sufficient title, on or before .   .   .   .   .   .   .   .

" Both of the said parties are ready and anxious to give full and complete effect to the said contract, if they are able to fulfil the same, but the said Morgan Gibbes Post is doubtful as to the ability of the said Edwin A. Post and wife to make him a good and sufficient title of the said premises, and is unwilling to receive said estate by the title of the said Edwin and wife thereto without the sanction of the opinion of said court. It is agreed by and between the parties that the said lot was formerly of the estate of Mary Gibbes, now deceased; that in her lifetime she made and executed her last will and testament, by which she devised said farm in trust for the benefit of her children, and by representation of their children during the lives of her said children and the survivor of them, and for her grandchildren and by representation their children, in fee upon the decease of the last survivor of her said children. The said will of said Mary Gibbes was duly admitted to probate and is made a part hereof.

" It is further agreed that in October, 1844, William D. Sohier, of Boston, was the sole trustee under the said will of the said Mary Gibbes, and that, as such trustee, he applied to the General Assembly of said State of Rhode Island, at its October session in 1844, for leave to sell portions of the trust estate devised in the said will, including the premises herein before referred to, and which are the subject of the contract now before this court, and that the prayer of his petition was granted. All the descendants of the said Mary Gibbes then living, who were of age, united with the

said Sohier in his said application to the General Assembly, and also Laura S. Gibbes, the widow of George Gibbes, one of the children of the said Mary Gibbes, as an annuitant under said will, and as guardian of her minor children.  The resolution of said General Assembly authorizing the said sale, with the preamble thereto, is made a part hereof.  It is also agreed that the said William D. Sohier gave the bond referred to in the said resolution, and complied in all respects with the condition thereof; that he sold and conveyed to R. Morgan Gibbes by three separate deeds, at different times, portions of the said "Perry Farm" referred to in said resolution; that at the same time the children of the said Mary Gibbes then living, and said Laura S. Gibbes as executrix of the will of said George Gibbes, deceased, as well as all the then adult grandchildren of the said Mary Gibbes, executed and delivered deeds of all the premises so conveyed by the said Sohier to the said R. Morgan Gibbes; said conveyances from said Sohier, said bond, and one each of the said several deeds of the said children and grandchildren of the said Mary Gibbes, and of the said executrix, are made a part hereof.  It is also agreed that the said Sohier received from the said Gibbes the fair market value of the land so sold at the time the said sales were made, and that upon the decease of William C. Gibbes, the last surviving child of the said Mary Gibbes, said Sohier's successor in office, as trustee under said will of said Mary, duly paid over and accounted for the said purchase money to all of the persons who would then have been entitled to the said real estate under the provisions of the said will of the said Mary Gibbes, had there been no sale as aforesaid. It is also agreed that at the time of said sale the annual income from the estate in question was in excess of all taxes thereon, and all expenses incident to the care thereof.  Between 1853 and 1861 all of the grandchildren of said Mary Gibbes, with the exception of Eugene B. Gibbes, a son of said William C. Gibbes, either in person or by their attorney, executed conveyances of said real estate to R. Morgan Gibbes, the purchaser thereof as aforesaid, which deeds, and the letters of attorney referred to therein, are made a part hereof.  Said William C. Gibbes, the last surviving child of said Mary Gibbes, died February 21, 1871.  The said Eugene B. Gibbes came of age about the year 1855, and is still

alive and under no disability. R. Morgan Gibbes, immediately upon receiving the conveyance of the said premises from said Sohier as aforesaid, entered into possession thereof, and soon after erected a dwelling-house thereon; and he and his heirs have since that time been in the peaceable, quiet, and uninterrupted possession of the same from that time to the present, claiming the same as their own absolute estate in fee simple. Alfred Gibbes, one of the grandchildren of the said Mary Gibbes, died prior to the year 1871, leaving a widow and two children, to wit: John Blair Gibbes and Alfred Gibbes, who at the time of the decease of the said William C. Gibbes were both minors, but have since attained the age of twenty-one years. Since becoming of age, they have executed and delivered conveyances to the said Margaret O. Post of any interest which they may have had in said lot, which said conveyances are made a part hereof. The several conveyances made by the grandchildren of said Mary Gibbes to trustees and by trustees to the Gibbes Land Company, and the act of incorporation of the said Land Company, may be referred to, if material. No question is made as to the form of the deed to be given, or as to the title of said Margaret O. Post to said lot as one of the devisees under the will of her late mother, Emily Gibbes, devisee under the will of the said R. Morgan Gibbes, or that the same was duly assigned to her in partition of her said mother's estate.

" Upon these facts, the parties hereto desire the opinion of the court as to whether said Morgan Gibbes Post ought to take the title of the said premises now in said Edwin A. Post and wife. If not, what additional deeds ought said Edwin A. Post and wife to obtain to enable them to make the title stipulated for in their said contract. " MORGAN GIBBES POST,

" EDWIN A. POST,

" MARGARET O. POST."

*Providence, January* 10, 1882. DURFEE, C. J. It is well settled that a legislature has power to authorize a guardian or trustee, by special vote or statute, to convert the real estate of his infant ward or *cestui que trust* into personal property whenever the conversion is for the benefit of the infant. The schedules of the General Assembly of this State show frequent exercises of

this power.   In exercising it the legislature acts in its capacity
of *parens patriœ*, doing for the infant what the infant would
probably do for himself but for his disability.    *Clarke* v. *Van
Surlay*, 15 Wend. 436 ; *Cochran* v. *Van Surlay*, 20 Wend. 365 ;
*Rice* v. *Parkman*, 16 Mass. 326 ; *Sohier* v. *Mass. Gen. Hospital*,
3 Cush. 483 ; *Clarke, Executor*, v. *Hayes*, 9 Gray, 426, 428 ; *Car-
roll et al.* v. *Olmstead et als.* 16 Ohio, 251 ; *Todd* v. *Flournoy's
Heirs*, 58 Ala. 99 ; *Blagge* v. *Miles*, 1 Story, 426 ; *Bambaugh* v.
*Bambaugh*, 11 Serg. & R. 191 ; *Thurston* v. *Thurston*, 6 R. I.
296, 302.

The contention here, however, is not that the power does not
exist in proper cases, but that a proper case did not exist for its
exercise.    The estate was given to certain persons for life, with
remainders over, some of the remainder-men being unborn when
the conversion was authorized, and others of them infants who
did not sign the petition for it.   The case stated shows that,
when the conversion was authorized, the annual income from the
estate was in excess of the taxes and of the expenses incidental
to its care, and that the reason for conversion given in the petition
was that the estate had become " of too high a value to be used
for agricultural purposes, in consequence of the demand for the
same by persons visiting Newport in the summer season for the
erection of summer residences."    From these facts it is argued
that it must have been patent to the General Assembly that the
estate was appreciating, so that to hold it was for the benefit of
the remainder-men, and to sell it was to sacrifice their prospects
to the interests of the life-tenants ; and, consequently, that the
General Assembly did not act in its capacity of *parens patriœ*,
doing for the remainder-men only what they would have probably
done for themselves but for their disability.

If the view that the estate was appreciating, so that to sell it
was to sacrifice the prospects of the remainder-men to the inter-
ests of the life-tenants, were the view which must have been
taken by the General Assembly, we should hesitate to say that
it acted within its proper powers.    See *Burke* v. *Mechanics' Sav-
ings Bank*, 12 R. I. 513.    We are of the opinion, however, that
the action of the General Assembly in such a case is not to be
judged by the result, so that the conversion shall be decided to

be valid or invalid according as it turns out to be for the benefit or the injury of the infant, but that it is enough if the General Assembly, acting according to its judgment at the time, in view of the then existing facts, comes fairly to the conclusion that the conversion will be for the infant's benefit; for otherwise the same act of conversion might be held to be valid at one time and invalid at another, according to the variations of the market. We are also of the opinion that the action of the General Assembly must be taken to be *primâ facie* valid, and that the burden of showing its invalidity is on those who seek to impeach it. Now taking these two rules for our guidance, we think the case stated for our opinion falls short of showing that the resolution authorizing the conversion was not duly passed; for it may well be that in 1844, the General Assembly, looking at the matter as it then presented itself, came to the conclusion, after due inquiry and consideration, that the price of real estate in Newport, situated as this estate was, had culminated, and that there was a probability that it might decline, and that therefore it would be for the benefit of the remainder-men, as well as of the life-tenants, to have the estate presently converted into money. On the case stated, therefore, our opinion is that the resolution authorizing the conversion was valid; and indeed we may add that, if the conclusion of the General Assembly was as we have supposed it might have been there is nothing in the case stated to show that it was not correct.

Upon the assumption, therefore, that all the facts which can affect the question above considered have been fully and truly stated, we declare it to be our opinion that Morgan Gibbes Post, under his contract, ought to take the title which Edwin A. Post and wife have in the estate which he has agreed to purchase of them.

We add, that inasmuch as Edwin A. Post and wife have held the estate adversely for nearly forty years, the last ten of which have elapsed since the expiration of the life-estates, they have a good title under the statute of possessions against all the *cestuis que trustent* now living, who were under no disability when the life-estates expired; for though the statute does not ordinarily run against *cestuis que trustent* in favor of a trustee, it will run

against them in favor of a purchaser of the trust estate. 2 Perry on Trusts, 2d ed. §§ 860, 865. One of the briefs contains the intimation that one of the *cestuis que trustent* has a wife living, and contends that though his interest may be barred, her inchoate right of dower still subsists as a cloud upon the title. The brief, however, does not intimate, and we presume it is not the fact, that the *cestui que trust* married before the alienation, and if he married afterward, while the estate was held adversely to him and his trustee, his wife cannot have acquired any inchoate right of dower, for she can only have dower in an estate whereof either her husband, or some person to his use, is *seised* during the intermarriage. Gen. Stat. R. I. cap. 218, § 1 ; 4 Kent Comment. 38 ; 1 Greenleaf's Cruise, \*156.

The briefs discuss other points, on which, however, as the facts bearing on them are apparently not fully disclosed in the case stated, we forbear expressing any opinion further than to say that if the *cestuis que trustent* who have given releases to Mrs. Post and have taken their proportions of the purchase money paid by her for the estate, did so advisedly, with full knowledge of the facts, when free from all constraint resulting from their relation to the trustee, and if they were at the time not subject to any disability, then they must be deemed to have consented to the alienation and to have confirmed it, and can no longer have any right to complain of or impeach it as a breach of trust. They certainly cannot be entitled to have both the estate and the purchase money into which it was converted. 2 Perry on Trusts, 2d ed. §§ 849–853.

*Darius Baker*, for Morgan G. Post.
*William P. Sheffield*, for Edwin A. Post *et ux.*