ELIZABETH VAULES CARLISLE and LESTER L. CARLISLE, JR., Defendants Below, Appellants,

*vs.*

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Executor and Trustee under the will of Mary Blanche Carlisle Hirsch, deceased,
Plaintiff Below, Appellee,

and

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Trustee under Agreement of Trust dated December 21, 1940, with BLANCHE C. HIRSCH, CARLISLE L. HUBBARD, AGNES HUBBARD, LINDA ELIZABETH STEWART, WILLIAM CARNEY, EVA VIRGINIA LOFLAND, AGNES HUBBARD TISCH, ALICE MITCHELL HUBBARD, LINDA STEWART EKLOF, LULU C. DARBY, JOHN C. DARBY, NELL A. BEARDSLEY, CHRISTIAN SCIENCE SOCIETY OF MILFORD, DELAWARE, THE FIRST CHURCH OF CHRIST SCIENTIST, BOSTON, MASSACHUSETTS, EDWARD STEWART and RICHARD HUBBARD, Defendants Below, Appellees.

*Supreme Court, On Appeal, October 24, 1953.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.

*Howard Duane,* Wilmington, and *Houston Wilson,* Georgetown, for appellants.

*David F. Anderson* (of Berl, Potter & Anderson), Wilmington, for appellee and cross appellant Delaware Trust Co.

*W. Reese Hitchens* and *H. James Conaway, Jr.* (of Hering, Morris, James & Hitchens), Wilmington, for appellees Agnes Hubbard, Richard Hubbard, Eva Virginia Lofland, William Carney, Nell A. Beardsley, Edward Stewart, Linda Elizabeth Stewart, Linda Stewart Eklof and Agnes Hubbard Tisch.

*Houston Wilson,* Georgetown, for cross appellee Elizabeth Vaules Carlisle.

SOUTHERLAND, Chief Justice, delivering the opinion of the court.

The principal question before us is whether a power of appointment reserved to herself by the settlor of an *inter vivos* trust was duly exercised by her last will and testament. Two other questions concern the validity of a bequest for the care of cemetery lots, and the apportionment of federal estate taxes.

I. *The question of the exercise of the power.*

On December 21, 1940 Mrs. Hirsch, a resident of Milford, Delaware, established an *inter vivos* trust of certain property of her own. She conveyed securities and cash to Delaware Trust Company, a trust company of the State of Delaware, in trust to manage and invest the trust fund, collect the income, and after the payment of charges and expenses to pay the income to her during her lifetime. The agreement provided that—

> "upon her death the Trustee shall assign, transfer and deliver the trust fund as then constituted, as directed and appointed by the Last Will and Testament of the Trustor or in the absence of such direction and appointment unto the next of kin of the Trustor according to the intestate law of the State of Delaware."

The settlor reserved to herself full power to place additional property in the trust, to withdraw any property from it, and to modify or revoke the agreement in whole or in part.

At the date of the trust agreement Mrs. Hirsch was a widow with no children, well advanced in years. Her next of kin were—

(1) Carlisle L. Hubbard, Agnes Hubbard and Linda Elizabeth Stewart, children of a deceased sister.

(2) Paris T. Carlisle, III, a brother.

(3) Lester L. Carlisle, a brother.

It does not appear whether a will of Mrs. Hirsch was in existence at the time of the execution of the trust agreement.

On August 2, 1950 Mrs. Hirsch made the will which is before us for construction. By that time her two brothers had died and her next of kin were—

(1) Carlisle L. Hubbard, Agnes Hubbard and Linda Elizabeth Stewart, children of a deceased sister.

(2) Elizabeth Vaules Carlisle, daughter of her deceased brother, Paris T. Carlisle, III.

(3) Lester L. Carlisle, Jr., son of her deceased brother, Lester L. Carlisle.

Mrs. Hirsch's will contains no reference whatever to the power of appointment reserved by her in the trust agreement of 1940. Nor does it mention the trust agreement or the trust property. After setting forth certain specific bequests and cash legacies to relatives and others the will devises and bequeaths "All the rest, residue and remainder of my estate" to Delaware Trust Company in trust for certain purposes. The will prescribes the general duties and powers of the trustee, including power to sell real estate, and then provides as follows:

> "The net income arising from the trust funds shall be paid in equal shares to Agnes Hubbard and to Elizabeth Vaules Carlisle [nieces of the testatrix] in monthly payments so long as they both shall live, and upon the death of either of them, then the full income shall be paid in monthly installments to the survivor of them during the life of such survivor."

Upon the death of the survivor of the two life beneficiaries the trust corpus is to be disposed of as follows:

To Christian Science Society, Milford, Delaware, $5,000.

Three-fourths of the remainder to the two children of Linda Elizabeth Stewart, a niece of the testatrix.

One-fourth of the remainder to the two children of Carlisle L. Hubbard, a nephew of the testatrix.

A codicil of May 22, 1951 is not here important.

Mrs. Hirsch died June 18, 1951. Delaware Trust Company duly qualified as executor. Thereafter it filed a complaint in the court below seeking instructions upon certain questions arising out of the administration of the estate. The most important of these is the question first above stated, viz.: Did Mrs. Hirsch intend by her last will and testament to exercise the power of appointment reserved in the trust agreement of 1940?

The case was heard by the Chancellor upon oral testimony and exhibits. Certain of the beneficiaries and next of kin, whom for the sake of brevity we shall call "the Hubbard-Stewart heirs", asserted that the power had been duly exercised. Certain others of the next of kin, whom for like reason we shall call "the Carlisle heirs", asserted the contrary. The Chancellor resolved the question in favor of the exercise of the power, holding that notwithstanding the absence of any language in the will referring to the power or to the property in the trust fund, there was sufficient proof from surrounding circumstances to justify the conclusion that Mrs. Hirsch intended by her will to exercise the power. The Carlisle heirs have appealed.

The requirements of the law with respect to the exercise by will of powers of appointment held by a testator have been settled by our own decisions. We begin with the rule that a general bequest or devise of all the testator's property, or the remainder of his property, is not in itself a valid exercise of a power of appointment. *Lane v. Lane's Adm'x*, 4 *Pennewill* 368, 55 *A.* 184, 64 *L.R.A.* 849. In that case the Supreme Court also considered the rules formulated to determine whether a power has been exercised by a will, and approved and adopted the tests set forth by Justice Story in *Blagge v. Miles*, 3 *Fed.Cas. No.* 1, 479, *pages* 559, 566, 1 *Story* 426. They are as follows:

> "It is now admitted to be established, as the general rule, that the intention of the testator is the pole star to direct the court in the interpretation of wills, * * *. Similar doctrines now generally prevail in regard to the execution of powers, and especially in regard to their execution by last will and testaments. * * * the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. * * *

> "Three classes of cases have been held to be sufficient demonstrations of an intended execution of a power; (1) Where there has been some reference in the will, or other instrument, to the

power; (2) or a reference to the property, which is the subject, on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power."

For an example of the second class of cases, see *Security Trust Co. v. Crumlish,* 21 *Del.Ch.* 208, 187 *A.* 20, for an example of the third class, see *Grant v. Mullen,* 15 *Del.Ch.* 174, 138 *A.* 613.

But in Delaware it has also been held that a power of appointment is validly exercised by will if, upon an examination of all the circumstances known to the testator when the will is made, the intention to exercise it is clear, notwithstanding the fact that the case does not fall within the three classes specifically mentioned in the *Lane* case.

In *Wilmington Trust Co. v. Grier,* 19 *Del.Ch.* 34, 161 *A.* 921, 923, Chancellor Wolcott commented upon Mr. Justice Story's opinion in the *Blagge* case and upon the enumeration of the three classes of cases evidencing an intention to exercise a power of appointment. These he termed the "classic categories". After quoting from Mr. Justice Story's opinion, he said:

"* * * But the same learned judge further in effect observed in the cited case that it is not absolutely necessary that a given case shall fall into one of these classes in order that an intention to execute a power may be evidenced. 'If a case of clear intention should arise,' said he, 'although not falling within the predicament of these classes, it must be held, that the power is well executed, unless courts of justice are at liberty to overturn principles, instead of interpreting acts and intentions.' The principles which he insinuates that judges are not at liberty to overturn in the process of ascertaining the intention of the donee of a power with respect to its exercise, I think are those principles generally by which courts are guided in the broad undertaking of seeking to derive the intention of one who executes an instrument, for at a later point in his opinion he says—'But then this very statement leaves it open to inquire into the intention under all the circum-

stances; which seems to me to be the true and sensible rule upon the subject; and when that intention is thus once ascertained, it governs.'

"We are then entitled to look to all the circumstances, and among these circumstances certainly those which are disclosed by the instrument itself are of prime importance. This is but another way of saying that in asking whether a will constitutes an exercise of a power, we are entitled to look at the whole will in all of its parts in order to see if there are any elucidating features which throw light on the particular question of intention in its relation to the power. To do this is to do no more than to apply the general rule applicable to the interpretation of wills."

If the *Blagge* and *Grier* cases correctly state the law, it follows that in addition to "the three classic categories" there is a fourth, that is, a case in which, from an examination of all the circumstances surrounding the making of the will, an intention to exercise the power is apparent and clear, notwithstanding the absence of any reference to the power or to the property that is the subject of it, and notwithstanding that the provisions of the will are operative without the exercise of the power. This may be called "the general category", since the first three are but specific instances of the fourth.

The Carlisle heirs, however, insist that this rule is not the law. Delaware law is the common law, and at common law, they say, the correct rule is that the intention to exercise the power must be found in the will itself either from a reference to the power or a reference to the property that is the subject of the power. The only exception to this rule, they assert, is the case of a devise of real estate that would be a nullity unless the power is held to have been exercised; the third category, it is said, does not apply to bequests of personal property. English cases decided prior to the *Wills Act* of 1837 are cited. See *Andrews v. Emmot,* (1788) 2 *Brown's C.C.* 297, 29 *Eng.Rep.* 162, and *Nannock v. Horton,* (1802) 7 *Ves.Jr.* 391, 32 *Eng.Rep.* 158.

Counsel have developed these contentions with assiduity and learning, but we do not yield assent. The American cases have not

uniformly followed the narrow rules of the common law in respect of powers of appointment. For example, the Court of Appeals of New York in *White v. Hicks,* (1865) 33 *N.Y.* 383, expressly refused to follow *Andrews v. Emmot, supra.* The *Grier* case expressly recognized the "general category" described in *Blagge v. Miles, supra.* We think that the *Grier* case correctly states the principles of law prevailing in Delaware, and we apply these principles to the instant case.

Since the first and second categories concededly have no application, we must examine the circumstances surrounding the making of the will to determine (1) whether its provisions will be a nullity if the power is held not to have been exercised, and, (2) if not, whether a clear intention to exercise the power appears from such circumstances.

It is said that the residuary bequest will be ineffectual and a nullity without the exercise of the power, that is, that non-exercise of the power would make the residuary bequest inoperative for lack of an estate to be bequeathed. The facts are as follows:

At the time Mrs. Hirsch made her will she owned outright property worth about $102,000, of which approximately $46,000 represented two parcels of real estate, her home in Milford and a farm. The balance was largely represented by chattels, cash in bank and government bonds. The value of the property in the trust was about $192,000.

As of the date of her death the value of her testamentary estate was about $97,000 and the value of the trust property about $221,000. The increase in the latter figure was largely caused by increase in the market value of the trust securities. It is therefore plain that both at the time of executing her will and at the time of her death the testatrix had a substantial disposable estate apart from the property held in the trust. By her will she bequeathed property and cash legacies amounting to about $25,000. It is shown by a statement prepared by Delaware Trust Company that after the deduction of debts and expenses there is available for the residuary estate, left in trust for her two nieces, about $66,000. Deducting estimated state inheritance and federal estate taxes applicable to the probate estate there is left in the

residuary trust property worth about $46,000. If the computation be made as of the date the will was executed the residuary trust would be somewhat larger.

Now it seems plain to us that the case cannot possibly fall within the third of the classic categories. That category is—

"where the provision in the will * * * executed by the donee of the power, would otherwise be ineffectual, or a mere nullity."

In the instant case the residuary clause is certainly not a nullity if the power is not exercised. It disposes of a substantial portion of Mrs. Hirsch's property.

It is urged, however, that the residuary clause is "ineffectual" if the power has not been exercised because the residuary trust would fail to provide a sufficient income for the support of the beneficiaries Agnes Hubbard and Elizabeth Vaules Carlisle. To some extent at least this contention was approved by the Chancellor. He said:

"In seeking to ascertain intent, I take it this court can look to see whether the testamentary trust income provision here involved, apart from the provision dealing with the distribution of corpus, would be effectual in view of the circumstances known to the testatrix. I further conclude that this means effectual in a real sense under the circumstances. In other words, I do not believe such a provision is necessarily effectual solely because there is some income no matter how small."

Proceeding from this premise he concluded that a provision for the support of the nieces which would net them about $1,000 a year each would not produce a substantial income for their support and hence the residuary clause would be rendered substantially ineffectual unless the power was intended to be exercised. Support for this conclusion the Chancellor found in the high regard and deep affection which the testatrix had for the two unmarried nieces who were the beneficiaries of the trust.

■ We are compelled to disagree with the Chancellor's conclusion upon the matter. A holding that a testamentary disposition

embodying a trust for the support of designated beneficiaries is ineffectual or a nullity requires, we think, a finding that nothing substantial would be bequeathed, that is, that the realizable income would be so small that it could not possibly be supposed that the testatrix intended such a result. *Hartford-Connecticut Trust Co. v. Thayer,* 105 *Conn.* 57, 134 *A.* 155, is cited by the Hubbard-Stewart heirs, and was relied on by the Chancellor, as authority that if the bequest is partially ineffectual without the exercise of the power an intention to exercise it will be inferred. In that case the testatrix had a power of appointment over trust property established by her husband worth about $500,000. At the time she made her will she had substantially no property of her own, and at the time of her death, personal property worth about $82,000. Her will undertook to bequeath legacies totaling $375,000. Thus the will was about 80 per cent inoperative in respect of the legacies and wholly inoperative in respect of the residuary clause.

In the instant case the probate estate is ample to pay all legacies and to leave a substantial trust fund for the support of the life beneficiaries. To say that the trust is inadequate is to indulge in conjecture as to the amount of provision that Mrs. Hirsch desired to make for her nieces. The danger of attempting to review testamentary dispositions in the light of considerations of this sort is manifest. An invitation would be extended to dissatisfied relatives to engage in litigation in a field of speculation and uncertainty—a field which, in the law of wills, certainly needs no enlargement.

We are cited to no case, and independent research by the court has found none, that sustains a holding that a bequest such as here involved is a nullity or is ineffectual.

For the foregoing reasons we are of opinion that the case does not fall within the third of the classic categories.

In so concluding we do not necessarily approve the decision in *Equitable Trust Co. v. Causey,* 24 *Del.Ch.* 259, 9 *A.2d* 714. That case seems to have carried to extreme lengths the application of the test prescribed by the third category.

It remains to be determined whether the case may be brought within the fourth category, that is, whether upon an examination of the will and all of the circumstances surrounding its making an intention to exercise the power by the residuary clause may be clearly inferred.

Now it is clear that in the consideration of a case claimed to fall within this fourth category some evidence of surrounding circumstances is necessarily, by definition, admissible. In this connection the provisions of the will are of prime importance, *Wilmington Trust Co. v. Grier, supra,* but no support for the contention of the Hubbard-Stewart heirs can be drawn from them. Mrs. Hirsch's will is clear and unambiguous; on its face it relates to the testamentary estate only. We therefore examine the other evidence adduced to show an intention to exercise the power.

We are confronted at once—inevitably—with the ever-recurring question: What kind of extrinsic evidence is admissible for this purpose? The confusion and uncertainty in the decisions upon this vexing problem are reflected in the exhaustive annotation on the point in 94 *A.L.R.* pages 26-293. One may be certain of only one conclusion—that no specific rule or set of rules can be formulated to supply an answer to every case. We are content to follow and re-affirm the general statements of our Supreme Court in the recent case of *Bird v. Wilmington Society of Fine Arts,* (1945) 28 *Del.Ch.* 449, 467, 43 *A.2d* 476, 484. Judge Rodney says:

> "Extrinsic evidence admitted, at times, as an aid to the construction of a Will, may generally be divided into two classes, both of which must be considered because both are involved in this case, and the rules governing the two classes may not be entirely the same. The two classes are:

> "(a) Those facts and circumstances concerning the testator, the recipient of his bounty, the character and extent of his property, and any other facts which were known to the testator and entered into his intent in using the words he used in the Will, and which should be equally in the knowledge of the court in ascertaining that intent.

"(b) The declarations of the testator himself with reference to the language of the will, or bearing upon its meaning.

"It is a general rule that a presumption exists that a testator uses ordinary words in their ordinary meaning, and that except as rebutted or affected by the context, these words are so construed. From these rules flow the thought that 'it is not permitted to interpret that which has no need of interpretation.'

"Nowithstanding these general rules, Courts still have the duty of attempting to place themselves in the position of the testator, and to ascertain his intent in using the words he did use. For this purpose Courts may, and usually do, admit certain extrinsic testimony to ascertain if any ambiguity exists in the language of the Will, and to determine that ambiguity. This testimony is often essential to definitely determine the identity of the beneficiary, or the character and extent of the property disposed of." [1]

As will be apparent from a reading of the *Bird* case the rule in Delaware is that extrinsic evidence of the first class, that is, the class defined in paragraph (a), is generally admissible; whereas evidence of the kind defined in paragraph (b) is generally inadmissible.

In the instant case the Hubbard-Stewart heirs claim that upon an examination of the surrounding circumstances an ambiguity is to be found in Mrs. Hirsch's will in the use of the phrase "my estate" appearing in the residuary clause. It is asserted that the evidence shows that this phrase was intended by her to include the trust estate as well as the probate estate.

█ The evidence offered in support of this contention is of various kinds. Some of it consists of declarations of the testatrix of her intentions in disposing of her estate. It was let in subject to

---

1. Language in the prior opinion of the Supreme Court in *Miller v. Equitable Trust Co.*, 27 *Del.Ch.* 282, 32 *A.2d* 431, may possibly be read as limiting the admission of extrinsic evidence to cases of ambiguity appearing on the face of the will. We think the *Bird* case states the correct rule.

objection to be later passed upon. In our opinion it was inadmissible and the Chancellor properly disregarded it. We consider only such evidence as we think falls within the class which is *prima facie* admissible under the definition in paragraph (a) in the *Bird* case, above quoted. The probative effect of such evidence is another matter.

(1) A great deal of evidence was adduced by the Hubbard-Stewart heirs to the effect that a marked coolness existed between Mrs. Hirsch and her brother Lester Carlisle, Sr., growing out of a family quarrel of years before. Other testimony was offered by the Carlisle heirs to the effect that Mrs. Hirsch's resentment did not extend to Lester Carlisle, Jr. The Chancellor found that the strained family relationship did exist and we accept his finding. It is to be observed, however, that it forms but a slender basis upon which to base a finding of ambiguity in respect of the intention to exercise a power of appointment. No doubt if the intention otherwise appeared it might have value as corroboration. But in this case there exists a contradictory circumstance which robs it of any real effect. In 1940, at a time when (so far as shown by the record) Mrs. Hirsch had no will, she executed the trust agreement, under the terms of which, as she must have known, a third of the trust estate would go to Lester Carlisle if she failed to exercise the power. One might suppose, if the family breach was a dominating influence in her disposition of the trust property, that she would have provided otherwise in the trust agreement or would have promptly made her will and exercised the power. Thus the testimony upon this point is met with evidence of Mrs. Hirsch's conduct quite inconsistent with it. The evidence as a whole cuts both ways and is therefore inconclusive.

(2) There is evidence that Mrs. Hirsch had especial affection and showed marked solicitude for her two unmarried nieces, Agnes Hubbard and Elizabeth Vaules Carlisle, the beneficiaries of the testamentary trust.

From this evidence it is sought to argue that it is unlikely that she would not have made better provision for them. As we have already said, this argument would lead to an attempt to speculate upon Mrs. Hirsch's views of the adequacy of the testamentary trust

property for the support of her nieces—a field we have declined to enter upon. It is further said that there was no reason why she should treat them unequally, and that if the power is held not to have been exercised the result is unequal treatment, since Elizabeth Vaules Carlisle receives one-third of the trust estate and Agnes Hubbard only one-ninth. Of course the fact of unequal treatment is in itself of no significance whatever. A testator may be as arbitrary as he pleases in disposing of his property. What the argument really means is that the testamentary scheme reflected in the will must be assumed to apply to the trust property also—that is, that the will itself embodies a scheme of testamentary disposition of both the testamentary and the trust property. But this assumption may not be made. It is the very question to be decided. Before this argument could have force, it would be necessary to find, *in the will itself,* some indication that Mrs. Hirsch intended to deal with the trust estate as her property. The will is completely lacking in any such indication.

(3) Copies of two prior wills of Mrs. Hirsch, dated in 1944 and 1948, were admitted in evidence. These wills differed from the 1950 will in two respects: In the prior wills the home property in Milford and its contents were left to Agnes Hubbard, and the bequest to the Christian Science Society after the death of the life beneficiaries of the trust was in the sum of $50,000. Other bequests and legacies were substantially the same. Therefore, it is said, if either of these wills had become effective, there would have been no property for distribution to the remaindermen of the testamentary trust, and the provision therefor would have been a nullity. Hence, it is argued, Mrs. Hirsch, when she made the prior wills, must be held to have intended to exercise the power of appointment; and since the 1950 will was copied from the 1948 will, she must be held to have had a like intention when she made the 1950 will.

The existence of a prior will is certainly a circumstance known to a testator, and we find considerable authority that in interpreting a will a prior will may be received in evidence to clarify an ambiguity in the description of a legatee or of property specifically bequeathed. *Thomson v. Thomson,* 115 *Mo.* 56, 21 *S.W.* 1085, 1128; *Re Gregory's*

*Settlement,* 34 *Beav.* 600, 55 *Eng.Rep.* 767; *In re Jeffery, L.R.,* 1914, 1 *Ch.* 375; *Flood v. Flood,* (1902) 1 *Ir.R.* 538. In *Central Trust Co. of Cincinnati v. Lamb,* 74 *Ohio App.* 299, 58 *N.E.2d* 785, a conflict in the language of the will respecting the payment of inheritance and estate taxes, apparent on the face of the will, was resolved by a comparison of the language with the language of a prior will.

But this case is of a different kind. The contention of the Hubbard-Stewart heirs is that the phrase "my estate" in Mrs. Hirsch's will embodies a latent ambiguity that is disclosed by an examination of the prior will. If in the 1948 will those words were clearly used to include the trust estate, say the Hubbard-Stewart heirs, then the inference is that they were so used in the later will, which was copied from the will of 1948.

But it is not correct to say that the 1948 will necessarily uses the phrase "my estate" as meaning the trust property as well as the testamentary estate. This does not appear upon its face. To arrive at this result it is necessary to proceed to construe the will as though it had been probated and were before the court for construction, and then to conclude that if that had happened the will would have been construed as exercising the power because the bequest of the residuary estate would have been ineffectual. We may ask: How could the court arrive at the proper construction of the prior will without receiving evidence of all the surrounding circumstances existing at the time the prior will was made? Such a method of proceeding would seem to open the door to the trial of a hypothetical issue and would thus lead to the piling of one set of extrinsic circumstances upon another. If the admission of extrinsic evidence is to be kept within reasonable bounds it would seem that a prior will should be admissible only for the limited purpose of comparing its language with the language of the later will. But even if admissibility of the 1948 will for all purposes is assumed, the case of the Hubbard-Stewart heirs is not helped. When the 1948 will is examined it is apparent that the conclusion sought to be drawn does not follow. It may have been Mrs. Hirsch's intention not to exercise the power by either will, and the changes made in 1950 may have been prompted by a realization that

little or nothing would pass to the residuary trust if the 1948 will were allowed to stand. It is impossible to know with any degree of certainty what prompted the changes. The Chancellor agreed with the Hubbard-Stewart heirs' contention upon this point, but we cannot do so. Once again we think the proffered evidence inconclusive.

(4) Item VII of the will bequeaths $5,000 to Linda Elizabeth Stewart, a niece. If the power has not been exercised she will receive also one-ninth of the net trust estate—apparently about $20,000. It is said that it is unreasonable to suppose that any one would dispose of his estate by permitting the same person to take under the will and also under the next-of-kin clause of the trust agreement. Why so? Why is it unreasonable to make two provisions for the same person? This argument proves too much, for its consequence would be that the exercise of a power of appointment by will over property held in trust is to be inferred from the fact that some of the beneficiaries named in the will are also included as ultimate beneficiaries of the trust in default of the exercise of the power. Such an inference can be drawn only if it be assumed that the provision in the will is intended to be in lieu of all other benefits, and this assumption in turn depends upon the assumption that the will intends to dispose of the trust property—the very question to be decided. Again, the reasoning is circular.

The Chancellor accepted this argument, but for the reasons given we cannot concur.

(5) The Hubbard-Stewart heirs build another argument upon the fact that Mrs. Hirsch was both donor and donee of the power and by the terms of the trust agreement retained almost complete control over the trust property. It was natural, they say, for her to regard the trust property as her own and to suppose that it was part of her testamentary estate and to be included in a bequest of her residuary estate. Certain letters from the Delaware Trust Company to Mrs. Hirsch were offered in evidence to show that she regarded the trust property as her own. Hence, it is said when she used the phrase "my estate" in her will she intended to refer to the trust property as well as to the property she owned outright.

This argument has appeal. A modern *inter vivos* trust, with full power reserved to the settlor to withdraw securities and to revoke the trust in whole or in part, is indeed a species of property interest closely approaching ownership. And the recent extension of estate tax law has no doubt helped to blur the legal distinction between ownership and power of disposition. This close relationship, when viewed in the light of persuasive evidence of intention to exercise the power, has been frequently pointed to as a circumstance corroborating the finding of intention. *White v. Hicks, supra; Hutton v. Benkard,* 92 *N.Y.* 295; *Hartford-Connecticut Trust Co. v. Thayer, supra.* But in order for this circumstance to have weight the intention to exercise the power must be derived from other circumstances. The donee has no disposable estate in the property that is the subject of the power, *Equitable Trust Co. v. Paschall,* 13 *Del.Ch.* 87, 115 *A.* 356, and to hold that intention to exercise it may be inferred from the single circumstance of control over the property would be to subvert the established rules of law that govern the question. We understand the Hubbard-Stewart heirs to concede that such intention must be found elsewhere, and they point to the Delaware Trust Company correspondence as evidencing that intention.

This correspondence, however, fails to disclose any such intention. Evidence that Mrs. Hirsch herself, in connection with the preparation or discussion of the terms of her will, was in the habit of using the term "my estate" as including the trust property might have weight. *Cf. Paul v. Paul,* 99 *N.J.Eq.* 498, 133 *A.* 868. But the correspondence contains no letter from her touching this matter, nor does it disclose any such usage of the phrase by the Delaware Trust Company. Mr. Garrigues' letter of November 27, 1942, relied on to show such usage, does not support the argument. The letter concerns the effect of "the new tax law" relating to powers of appointment. It says:

> "Under your trust agreement the principal of the trust fund at your death is subject to distribution as provided in your will. The power of appointment, however, in this instance is not a determining factor as to estate taxes. The trust fund would in any event be a part of your estate by reason of the fact that the

agreement may be revoked by you and you receive the income currently from the fund."

The reference to "your estate" is obviously to the taxable estate. Mrs. Hirsch's attention was specifically called to the existence of the power and she was advised that she could probably effect no tax saving by releasing it. If she could draw any inference from the letter, it would be that the writer assumed that the power would normally be exercised. Yet in none of the three wills subsequently made is it mentioned. And nothing in the letter suggests an inference that the trust property could pass under the will if the power were not exercised.

The other letters, dated December 29, 1947 and September 26, 1950, are also without significance. The first relates solely to the matter of Delaware Trust Company's appointment as executor. The second refers to the investments in the trust as investments "you now hold". Such a characterization is natural enough, but it falls far short of showing any usage by Mrs. Hirsch of the phrase "my estate" in connection with her will as including the trust property.

As to the effect of the circumstance of large control over the trust property, as supplemented by the letters discussed, we think that the showing made is much too meager to justify a finding of intention to exercise the power. The contrary finding would go a long way toward the adoption of a rule requiring from a testator desiring not to execute the power an affirmative declaration of a refusal to exercise it. Possibly such a rule would be better adapted to modern conditions than the rules of the common law.[2] In England and in some of the states statutes have been adopted declaring that the exercise of a power by will is to be presumed in the absence of evidence to the contrary. But such a change in Delaware, if desirable, must come from the legislature and not from the courts.

We have above reviewed all the admissible extrinsic evidence adduced to show an intention to exercise the power. We find it in-

---

2. See the critical comments of Chief Justice Denio in *White v. Hicks, supra.*

conclusive. It is as consistent with an intention not to exercise it as with the intention to do so.

We realize fully that Mrs. Hirsch *may* have intended to dispose of the trust property by her will. She may have thought that a will disposing of her own estate would dispose of property held in trust.

If so, she made a mistake of law, and it cannot be remedied now. This is not a case of a "home-made will" inartificially drawn by an ignorant or ill-informed person. The 1944 will was drafted by her lawyer, and the language of the residuary clause of the subsequent wills was drawn from the 1944 will. The 1950 will, though drafted and executed in the office of the Delaware Trust Company, was promptly submitted to a lawyer for examination and comment. Moreover, the testatrix was an intelligent woman, familiar with her affairs and with the status of the trust property. The Trust Officer of the Delaware Trust Company regarded her as "an independent thinker".

In the light of the inconclusive effect of the testimony and of the facts just mentioned but one conclusion can be reached. The governing rule in such a case is that stated by Justice Story in *Blagge v. Miles, supra,* and expressly adopted by our Supreme Court in *Lane v. Lane's Adm'x supra*:

> "The intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being decreed an execution of the power." 4 *Pennewill* 376, 380, 55 *A.* 184, 187, 64 *L.R.A.* 849.

Mrs. Hirsch's intention to execute the power is neither apparent nor clear. The facts are fairly susceptible of the interpretation that she did not intend to execute it. Under the law it must be held that she did not do so.

II. *Validity of the bequest for the care of cemetery lots.*

Item IV of the will provides as follows:

> "Having already made arrangements for the perpetual upkeep of the family burial lots of my father, Paris T. Carlisle, in

Barratt's Chapel Cemetery, near Frederica, Delaware, I give, devise and bequeath unto the Delaware Trust Company, a corporation of the State of Delaware, One Thousand Dollars ($1,000.00) which is to be invested by it and kept invested, the net income therefrom to be used for the annual cleaning and repair of tombstones, monuments, markers and enclosures located or to be located on said lots in said Barratt's Chapel Cemetery."

Being in doubt, the executor and trustee requested instructions whether this provision was a valid bequest of a charitable trust, or was void as a violation of the rule against perpetuities. The validity of the bequest was not challenged by any beneficiary under the will. The Chancellor received briefs upon the point, the executor and trustee attacking the validity of the bequest, and one of the Carlisle heirs upholding it. Upon the authority of *Trustees of Methodist Episcopal Church v. Williams,* 6 *Boyce* 62, 96 *A.* 795, he decided that the bequest was valid. *Delaware Trust Co. v. Delaware Trust Co., — Del.Ch. —, —,* 95 *A.2d* 569, 575-576.

From that part of the judgment which embodies this holding the executor and trustee has appealed. The Carlisle heir upholding the validity of the bequest moves in this court to dismiss the appeal on the ground that the appellant is the trustee of the bequest and may not be permitted to attack it. We do not reach this question, since we think that the motion must be granted for another reason.

[10] The issue presented to the court below concerned the existence of a charitable trust. To a suit involving this issue the Attorney General is a necessary party. *Trustees of New Castle Common v. Gordy, — Del.Ch. —,* 91 *A.2d* 135. That case concerned the administration of a trust conceded to be charitable, but we see no difference in principle between such a case and a case involving the validity of a bequest attempting to create such a trust. Indeed, if the public interest requires the appearance of the Attorney General when questions of administration only are involved, it would seem that *a fortiori* he must be a party when the very existence of the charity is assailed.

The motion to dismiss will be granted, on the ground that a necessary party is not before the court, but without prejudice to the right of the executor and trustee to take further proceedings if it so desires.

### III. *Apportionment of federal estate taxes.*

Instructions were asked whether the executor is under the provisions of the will entitled to apportionment of federal estate taxes assessable in respect of the trust property.

Item XII of the will provides as follows:

> "I authorize and direct that all inheritance, estate and other taxes which may be assessed against my estate or any part thereof or which may be charged to any of the beneficiaries under this Will shall be paid out of my Estate by the Executor of this Will, it being my intent that all bequests and devises herein made shall be free of all such taxes."

The Chancellor was not required to decide this question, since he held that the trust property passed under the will, and upon this holding the question of apportionment could not arise. We see no reason, however, to remand the case for a further hearing upon the matter. No question of fact is involved, and we proceed to decide it.

We think the question is free from any real doubt. The phrase "my estate" in the quoted item clearly has the same meaning as we have found it to have in the residuary clause of the will—the testamentary estate. Under our *Apportionment Act,* 12 *Del.C.* §§ 2901-2906, the statutory scheme of prorating estate taxes governs unless the testator's intention to depart from that scheme clearly appears. *Wilmington Trust Co. v. Copeland,* — *Del.Ch.* —, 94 *A.2d* 703. Not only does such an intention fail to appear, but it would be absurd to suppose that under the facts of this case the testatrix intended to saddle her residuary estate with a tax liability attributable to the trust property—a liability that might wipe it out altogether. In this court the Carlisle heirs concede that the tax should be apportioned. We hold that the executor is entitled to apportionment.

For the reasons above stated paragraph 4 of the findings prefixed to the judgment of the court below of April 17, 1953, and paragraphs 2 and 3 of the decretal provisions thereof, are reversed; and the cause will be remanded to the Court of Chancery in and for New Castle County for the entry of a judgment in conformity with this opinion and for such further proceedings as may be appropriate.