## In re Alice Dupont BUCK TRUST.

Court of Chancery of Delaware,
New Castle.

April 21, 1971.

Henry M. Canby, of Richards, Layton & Finger, Wilmington, for Bank of Delaware, Trustee under the will of Alice du-Pont Buck.

Joseph H. Geoghegan, of Potter, Anderson & Corroon, Wilmington, for William E. Haible.

David T. Dana, III, of Richards, Layton & Finger, Wilmington, for Bank of Delaware, Guardian ad Litem (for Thomas C. Haible, John R. Haible and Charles C. Haible), and for Paul duPont Haible and William W. Haible.

DUFFY, Chancellor:

Bank of Delaware, Trustee of a trust created under the will of Alice duPont Buck, filed a complaint for instructions to secure an answer to one question: Did Alice Wilson Haible, a daughter of Mrs. Buck, effectively exercise a testamentary power of appointment given to her by Mrs. Buck's will dated January 7, 1966?

### A.

Mrs. Haible died on December 2, 1969 survived by her husband and five sons, three of whom are minors and for whom the Court appointed a guardian ad litem.[1] If the power was exercised the property subject to it will be delivered to an inter vivos trust in which Mrs. Haible provided for a marital deduction trust for her husband and a non-marital deduction trust for both her husband and her children. If the power was not exercised then, under the terms of Mrs. Buck's will, all property passes to Mrs. Haible's children.

Mrs. Buck's will, dated January 7, 1966, created the power in these words:

"So far as permitted by law, I hereby give to each of my said children who shall survive me the authority and power to appoint and dispose of such child's

---

1. Mrs. Haible was a Massachusetts domiciliary but it is undisputed that Delaware law governs this decision.

share of the trust estate in such manner and in such portions and for such estate or estates, legal or equitable, as may be specified in such child's Last Will, whether executed before or after my death; provided such child shall not appoint such share to or for the benefit of such child, such child's estate, such child's creditors, or the creditors of such child's estate, and provided such child shall appoint such share to or for the benefit of one or more persons or other donees within a class which does not include any others than such child's spouse, descendants of mine, other than such child * * *."

Mrs. Buck died on December 29, 1967. The claimed exercise of the power was made by Mrs. Haible in her will dated October 1, 1965:

"I devise and bequeath all the rest, residue and remainder of my estate, together with any property over which I may have the right to exercise any power or powers of appointment to Bank of Delaware * * * as Trustee under a certain revocable living trust agreement entered into by me with Equitable Trust Company * * * on the 23d day of January, 1940, * * *."

In another part of her will Mrs. Haible specifically (and effectively) exercised a power given her by her mother in a trust established by an agreement between Mrs. Buck and Equitable Trust Company, dated July 14, 1934; Mrs. Haible had no other power of appointment when she executed her will in October 1965.

This is the decision on a motion for judgment on the pleadings filed by the guardian and the adult children (respond-ents) after briefing by them and by Mr. Haible.

## B.

■ It is established Delaware law that a general bequest or devise of all of a testator's property (or the remainder thereof) is not in itself a valid exercise of a power of appointment. Carlisle v. Delaware Trust Co., 34 Del.Ch. 133, 99 A.2d 764 (Supr.Ct.1953); Lane v. Lane, 4 Pennewill 368, 55 A. 184, 64 L.R.A. 849 (Supr. Ct.1903). It is equally clear that a testator may evidence in more than one way his intention to exercise a power; he is, in short, not limited to one formality by which his purpose is disclosed. In Wilmington Trust Co. v. Grier, 19 Del.Ch. 34, 161 A. 921 (1932) the Chancellor reviewed three "classic categories" evidencing intent to exercise, and in *Carlisle,* after approving that approach, the Supreme Court added a fourth: "the general category."[2] See 15 A.L.R.3d 346, 360.

■ In applying these tests, whatever the category, the intention of the testator remains the controlling factor as it is generally in the interpretation of a will. 91 A.L.R. 621, 622. We are here concerned with the first class or category discussed in *Carlisle* and prior cases: there is a reference to a power and its exercise in Mrs. Haible's will; does it show an intention on her part to exercise the after-acquired power given her by her mother?

## C.

The respondents argue that it does not because there is no evidence of specific intent to exercise the power. They also

2. In *Grier* the Court wrote:
"The classic categories into which the cases may be cast that illustrate the methods by which an intention to execute a power may be disclosed are stated by Mr. Justice Story in Blagge v. Miles, 1 Story 426, 3 Fed.Cas. page 559, No. 1,479, to be: '(1) Where there has been some reference in the will or other instrument, to the power; (2) or a reference to the property, which is the subject on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power.' "

contend that (a) the donor of the power, Mrs. Buck, intended that it be exercised after she created it and (b) if Mrs. Haible exercised the power, she did so in a way that exceeded what was given to her.

In their brief the respondents seem to argue that, as a matter of law, a writing expressing an intent to exercise a power is effective only if the power was created before the writing was made. An argument the respondents clarified their position as being that an after-acquired power may be exercised but not in the way shown by these pleadings.

To settle the question, I conclude that a power existing at a donee's death but created after execution of his will, is effectively exercised thereby, if the will is an otherwise effective appointment, unless intent of either donor or donee is manifested to the contrary. Restatement, Property § 344; 72 C.J.S., Powers § 37. A will takes effect at the date of death and, under general law, property acquired after execution is effectively passed by it. 12 Del.C. § 107; Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476 (Supr.Ct.1945).

Here, the crucial question is one of intent. There is not a "specific" intent manifested as to this "specific" power but I do not regard that as fatal. It is only one factor to weigh when one looks at what Mrs. Haible said and the plan her will reveals. She said:

"I devise and bequeath all the rest, residue and remainder of my estate, together with any property over which I may have the right to exercise any power or powers of appointment to Bank of Delaware * * * as Trustee * * *."

It seems to me that is intended to be all inclusive, that is, inclusive as to all property which she had not otherwise given. Thus by it she gave *all* of the residue of her estate. And the language referring to a power of appointment must be construed in the light of that manifest objective. It is, indeed, part of the same sentence, i. e., the residue "together with any property" over which she had a power. While "any" may have different meanings depending upon the text, certainly it is here synonymous with *all.* Compare Wilmington Trust Co. v. Sloane, 30 Del.Ch. 103, 54 A.2d 544, 548 (1947).

Significant, too, is Mrs. Haible's use of the word "may" in referring to a power. While the word might refer to an existing power of which she knew but which she did not identify, that view is unrealistic in light of her reference to one specific power. I think it refers to either an existing power of which she did not have knowledge or, more likely, to a power which she "might" have at the time of her death. Compare the construction of "may own" in *Bird, supra;* see Black's Law Dictionary (4 ed.) and Ballentine Law Dictionary (2 ed.). In short, I think the term looks to future power and powers and shows an intent to exercise them.

I am satisfied that by the language she used, Mrs. Haible shows her intention to exercise at her death any power of appointment she had at that time, and that included the power here in question. That view is supported by the testamentary plan of the entire will, particularly in its relationship to her husband. She gave him all of her tangible property, all of her real property and she exercised the power of appointment (given her in 1934 by her mother) in his favor; she also named her husband as one of her executors. And as to the power created in 1934, she said that if her husband did not survive her, she refrained from exercising the power. It is clear, therefore, that Mrs. Haible's intent was to give all of her remaining property and all property over which she had any power of appointment at the time of her death to the inter vivos trust.

### D.

The two remaining contentions by the respondents require only brief comment.

■ The power given by Mrs. Buck was of course a limited power. But I see nothing in it which required an exercise after it was created. Her use of the word "pursuant" referred to the power she thereby gave, not to the time of exercise; and the permission to exercise by will, by its terms referred to "last" will which in this context means the probated will. Hence, it has no reference to the time of execution.

■ Finally, the respondents argue that Mrs. Hailble's appointment was to a trust which may be subject to creditor claims

and this exceeds the power conferred in her.[3] Admittedly, there is a possible exposure to claims by creditors but that mere possibility should not, as a matter of law, require frustration of the intention of both donor and donee of the power. If the respondents show that property subject to the power will be, or probably will be, subject to such claims a different result may be reached. But compare Equitable Trust Co. v. Foulke, 28 Del.Ch. 238, 40 A.2d 713 (1945). Now, however, the matter is before the Court only on the pleadings.

The motion will be denied.

3. By the terms of Mrs. Haible's will the trust is subject to claims of creditors only if the rest of her estate is insufficient to settle all such claims. There has been no showing that this will be the case.