# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF | ) |
| THE ESTATE OF | )   C.A. No. 2023-0324-LM |
| ROBERT W. PEDIGO, IV | ) |

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Final Report: August 1, 2024
Date Submitted: February 13, 2024

1.      This final report makes post-trial findings of fact and reaches conclusions of law concerning the Estate of Robert W. Pedigo, IV.[1]

2.      Petitioners Kristen Johnson ("Kristen") and Robert Pedigo V ("Robert" collectively, "Petitioners"),[2] filed this Petition for Declaratory Judgment on March 16, 2023, regarding their father's will.[3]  The Petition seeks clarification from this Court regarding Item 4 of Robert W. Pedigo, IV's (the "Decedent's") will.[4]

3.      Petitioners claim Item 4 of the will contains a patent ambiguity whereby it first gives the residuary estate to the Petitioners, then a second clause gives the

---

[1] The official transcript of the trial is cited as "Tr. at __" and entered on the docket at D. I. 78.

[2] Many of the parties in this case share similar first and last names due to their familial relationship.  I intend no disrespect or familiarity with using first names.  My intention is to avoid confusion.

[3] D. I. 1.

[4] *Id.*

residuary estate to the Petitioners and Erica Bateman ("Erica"), Decedent's stepdaughter.[5]

4. Petitioners assert that Decedent intended for his residuary estate to pass to them.[6] They contend that the Decedent's intent is evidenced through (i) the sections in his will that bequest specific items to Bateman to "makeup" for the assets that she "lost" as a result of his new residuary clause and (ii) through the language added to Item 3(A)(14) which emphasizes that the Decedent did not want Bateman to receive any benefits from the inheritance that he received from his parents.[7]

5. Further, Petitioners assert that the Decedent made the following mistake attempting to craft his own Will: (i) the Decedent inadvertently left in Item 4(B)(1) from the prior will because Item 4(1) was labelled the same in each version; and (ii) the Decedent eliminated Item 4(A) from the prior will because his wife had predeceased him. He moved Item 4(B) up a space but left Item 4(1) in the Will which makes Item 4 ambiguous when those two sections are read together.[8]

6. The Court held a one-day trial on February 13, 2023.[9]

---

[5] *Id.*at ¶ 15.

[6] *Id.*at ¶ 17.

[7] *Id.*

[8] *Id.* at ¶ 23.

[9] D. I. 75.

## FINDINGS OF FACT

7. The evidence presented at trial supports the following findings of fact:

    a. Decedent died on October 29, 2022.[10] He was a Delaware Bankruptcy attorney[11] who loved and supported his family.[12] He was survived by his daughter, Kristen, son, Robert, and his stepdaughter, Erica.

    b. His wife, Donna Pedigo ("Donna"), the mother of Erica Bateman, predeceased the Decedent by approximately four months, and passed away in June of 2022.[13] She passed due to complications related to an autoimmune disease.[14]

    c. Five days before his death, on October 24, 2022, the Decedent executed a Will (the "Will").[15] The Will revoked his prior November 13, 2018 will (the "Prior Will" or 2018 Will").[16] The 2018 Will contained the following language:

> "(A) All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate[d], including all property and interests over which I shall have any powers of

---

[10] D. I. 20 at ⁋ 1.

[11] Tr. at 7:15-22.

[12] Tr. at 106: 17-19.

[13] Tr. at 10:6-12.

[14] Tr. at 17-21.

[15] D. I. 1 (Exhibit A).

[16] D. I. 1 at ⁋3.

appointment at the time of my death, I give, devise and bequeath unto my wife, DONNA KAY PEDIGO, if she shall survive me by thirty (30) days.

(B) In the event that my said wife, DONNA KAY PEDIGO, and I die either as a result of a common disaster, or for any other cause within (30) days of one another, then in that event I give, devise and bequest all the rest, residue and remainder of my estate as follows: (1) I give, devise and bequest all the rest, residue and remainder of my estate in equal shares to my daughter KRISTEN AMBER JOHNSON, my son ROBERT WILLLIAM PEDIGO V, and my step-daughter ERICA BATEMAN, or their issue(s) per stirpes."

d.      The October 2022 Will changed the language of item 4 in

the Prior Will as follows:

"(A) All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate[d], including all property and interest over which I shall have any power or powers of appointment at the time of my death, I give, devise and bequeath unto my Son, ROBERT WILLIAM PEDIGO V, and Daughter, KRISTEN AMBER JOHNSON, if they shall survive me by thirty (30) days.

(1) I give, devise, and bequest all the rest, residue and remainder of my estate in equal shares to my daughter KRISTEN AMBER JOHNSON, my son ROBERT WILLIAM PEDIGO V, and my step-daughter ERICA BATEMAN, or their issue(s) per stirpes."

4

e.      All parties have agreed that the provisions are in conflict.[17]

f.      Prior to his wife, Donna's, death, Erica lived with the Decedent and her mother, and served as her mother's medical power of attorney ("POA").[18] Decedent changed his will following the death of his wife. [19]

g.      In the months leading up to Donna's death, Decedent and Donna expressed concerns regarding Erica's ability to act as Donna's POA.[20] Eventually they revoked the POA and Erica was removed due to her tendency to "[do] what she wanted" and their concern about Erica's drinking and their perceived willingness to honor Donna's healthcare decisions.[21]

h.      Decedent and Erica had a turbulent relationship. Decedent made several expressions of his concern regarding Erica's behavior, particularly the way he thought she treated her mother due to what he believed to be alcoholism.[22] Decedent described her behavior as erratic in that she would be present and attentive with the family and then go on binges and be absent and unreliable.[23] At some point,

---

[17] Tr. 12:9-10.

[18] Tr. 10:16-19.

[19] Tr. Exhibit 7.

[20] Tr. 10:16-11:4.

[21] Tr. 11:20-23.

[22] Tr. 10:22-24.

[23] Tr. 10:22-11:4; Tr. 86:8-21; Tr. 213:23-Tr. 216:16.

Erica accused him of making sexual advances toward him.[24] She told multiple family members about it.[25]

   i.   After Donna passed away, Decedent updated his will, removing his wife from portions of the Will to effectively ensure that Erica would not benefit from his family's wealth, in Item 3(A)(14).[26]

   j.   He also updated Item 4 of the Will, as noted above, and inadvertently left 4 (A)(1)[27] which conflicts with the provision he added devising the residuary of the estate to his natural born children.

   k.   Petitioners seek to resolve the conflict between the Item 4 provisions and seek declaration from this Court regarding the interpretation of the Will.

## CONCLUSIONS OF LAW

8.   In interpreting the language of a will, the testator's intent controls, considering "his or her dominant purpose."[28]

---

[24] Tr. 85:1-5; Tr. 87:18-Tr.88:1. This is an unsubstantiated claim only relevant here to show the change in the relationship between decedent and his stepdaughter. It does not provide an opinion on the claim's veracity.

[25] Tr. 85:1-5; Tr. 109:2-110:5.

[26] D. I. 1 (Exhibit A).

[27] Item 4(A)(1) in the October 2022 Will has the same language as Item 4(B)(1) in the November 2018 Will.

[28] *In re Will of Fleitas*, 2010 WL 4925819, at *4 (Del. Ch. Nov. 30, 2010).

9. In determining a testator's intent in a trust instrument, this Court considers the language of the whole instrument, "read as an entirety, in light of circumstances surrounding its creation."[29]

10. The Court of Chancery has adopted two principles in reviewing a will: "1) where the language of a will is unambiguous, the court must enforce its terms as written" and "2) where the language used in a will is ambiguous, the court must give the language that meaning which will effectuate the intent of the testator."[30] Further, "Courts may, and usually do, admit certain extrinsic testimony to ascertain if any ambiguity exists in the language of the Will, and to determine that ambiguity."[31] However, if the language of the Will is "clear and readily understandable," extrinsic evidence is not considered.[32] And, if a mistake was made in writing a will, the Court of Chancery does not have the "power to correct a mistake, and it cannot, by introduction of parole evidence, rewrite the [will]."[33]

---

[29] *Id*.

[30] *Id.* (citing *In re Estate of Skwarlo,* 2001 WL 312451, at *1 (Del. Ch. Mar. 12, 2001)).

[31] *Carlisle v. Delaware Tr. Co.*, 34 Del. Ch. 133, 145, 99 A.2d 764, 771 (1953); *See also In re Brans,* 2017 WL 7048673, at *3 (Del. Ch. January 23, 2018) (holding that where the Will expresses the Decedent's clear intent and lays out a clear process, there is no ambiguity.).

[32] *See Miller v. Equitable Trust Co.,* 32 A.2d 431, 434 (Del. 1943)(holding the Court is bound to follow the clear intent if the expression is "plainly discernible from the language employed, and in such cases surrounding facts and circumstances can be of no importance").

[33] *In re Brans,* 2017 WL 7048673, at *3 (Del. Ch. January 23, 2018), citing, *Fleitas,* 2010 WIL 4925819, at *5 (citation omitted).

11.    Ambiguity exists when the terms of the Will are "reasonably and susceptible of different interpretations or may have two or more different meanings."[34]  There are two types of ambiguity, latent and patent.  Latent ambiguity is where the language employed is clear and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.[35]  A patent ambiguity is that which appears on the face of the instrument and arises from the defective language used.[36]

12.    Petitioners assert that Decedent mistakenly left Item 4(B)(1) from the Prior Will in the October 2022 Will when he changed the will.  Because Petitioners believe this is an ambiguity, they offer evidence of decedent's intent to change the operation of Item 4, first by the insertion of the conflicting provision, next, added sections which bequeath personal items to Erica due to her from her mother[37], and finally through Decedent's inclusion of language in  3(A)(14) which emphasizes that the Decedent did not want Erica to receive any benefits from the inheritance that he received from his parents.[38]

---

[34] *Fleitas,* 2010 WIL 4925819, at *5 (citation omitted).

[35] *In the Matter of Estate of Gallion*, 1996 WL 422338, at *2 (Del. Ch. June 27,1996).

[36] *Id.*

[37] The Decedent added sections that bequeath a computer, iPad, iPhone, baby grand piano, $7,000, etc. to Erica that were not in the Prior Will.

[38]  In comparing Item 3 (B) of the Will to Item 3 (9) of the Prior Will, the Decedent gives his "inheritance, monies, funds, stocks, gifts... that [he] inherited from the estates of [his]

13. It is apparent from the testimony, evidence submitted, and the language in the will that the Decedent inadvertently left Item 4(B)(1) in the updated version of his Will.

14. Petitioner's updated language, removing his wife who predeceased him, and adding his natural children only in Item 4—effectively devising his residuary estate is clear enough to conclude that the remaining sub paragraph was inadvertently left from the Prior Will.

15. Ultimately, I find Item 4 to be ambiguous. Specifically, it contains a latent ambiguity. Item 4 of the Will first gives the residuary estate to the Petitioners, then a second clause gives the same property, the residuary estate, to the Petitioners *and* the Respondent.

16. Here, the language is facially clear and readily understandable. However, as noted above, the conflicting language in Item 4 creates ambiguity of the Decedent's intent and who the true beneficiaries of the residuary estate are.

17. I find Petitioner's arguments credible. The evidence submitted regarding Decedent's additions to Item 3 which devised property from Defendant's mother expressly to her; the added language in Item 3(A)(14) refusing to allow Erica to take from the Pedigo family inheritance; and the relationship between Erica and

---

father...and/or mother... ." to the Petitioner's in equal shares. However, in the 2022 Will, he added a line in 3(A)(14) which states "... my step - daughter ERICA NICOLE BATEMAN shall take no part in a PEDIGO FAMILY INHERITANCE".

the Decedent at the tie of updating the will, all sufficiently show that Decedent intended to revoke Erica's ability to take from the residuary estate.

18. For the reasons set forth above, I recommend the residuary estate be devised solely to the Petitioners and not to Erica Bateman. This is a final report pursuant to Court of Chancery Rules 143 and 144. Exceptions may be taken within eleven days of the date hereof.[39]

/s/ Loren Mitchell
Magistrate in Chancery

---

[39] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").